158 N.J. Super. 62 (1978)
385 A.2d 864
MELINDA KAPLAN, PLAINTIFF-APPELLANT,
v.
SINGER COMPANY AND PHILIP MAZZA, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Submitted March 6, 1978.
Decided March 28, 1978.
*63 Before Judges MICHELS, PRESSLER and MILMED.
Mr. Melvin Tolstoi, attorney for appellant (Mr. David Hoffman on the brief).
Messrs. Morgan, Melhuish, Monaghan & Spielvogel, attorneys for respondents (Mr. Vincent J. Cirlin on the brief).
PER CURIAM.
Plaintiff Melinda Kaplan appeals from a summary judgment of the Law Division granted in favor of defendants Singer Company and Philip Mazza on the ground that the action was barred by the tort exemption contained in the New Jersey Automobile Reparation Reform Act, commonly referred to as the "No Fault Law." N.J.S.A. 39:6A-1 et seq. The pivotal question raised by this appeal is whether the treating physician's charge for his initial examination is to be included in calculating the $200 medical expense threshold requirement referred to in N.J.S.A. 39:6A-8.
On May 21, 1974 plaintiff was injured when her automobile was struck while stopped for a traffic signal. Plaintiff's vehicle was directly behind defendant Mazza's vehicle which was waiting for the light. When the signal changed defendant Mazza backed into plaintiff's automobile, injuring plaintiff. On May 23, 1974 plaintiff went to Dr. Stanley S. Fieber who, after a complete neurological and orthopaedic physical examination and X-rays, diagnosed her injuries generally as acute cervical, para-dorsal and lumbo-dorsal sprains. Dr. Fieber prescribed physiotherapy treatment in the form of diathermy to her upper and lower back and neck, muscle relaxants, analgesics and a lumbo-dorsal support. Plaintiff was treated by Dr. Fieber until October 3, 1974, when she was discharged with a final diagnosis of a chronic low back strain. Apparently there were no permanent injuries. Dr. Fieber rendered an itemized bill for his treatment which totalled $234, exclusive of X-rays.
*64 Plaintiff instituted this action against defendants to recover damages for the injuries sustained as a result of the accident. Defendants pleaded the tort exemption section of the No Fault Law (N.J.S.A. 39:6A-8) as a bar to the action and moved for summary judgment. They claimed that plaintiff's injury was confined solely to the soft tissue of the body and that the medical expenses incurred by her were less than the $200 threshold required by the act. Specifically, they claimed that the $50 charge for the "Complete neurological and orthopaedic physical examination" and the $25 charge for the "Final Evaluation" were "diagnostic medical expenses" and, as such, were not properly includible in calculating the $200 threshold. Also, that the separate charges made by the doctor for office visits and physiotherapy on the same day were not justified and should be excluded from the calculation. The trial judge granted summary judgment in favor of defendants, concluding that the "Complete neurological and orthopaedic physical examination" was a diagnostic medical expense not properly includible in calculating the $200 threshold, and thus the tort exemption applied because the threshold was not reached. The trial judge did not, however, rule on the other issues raised by defendants. This appeal followed.
N.J.S.A. 39:6A-8 provides:
Every owner, registrant, operator or occupant of an automobile to which section 4, personal injury protection coverage, regardless of fault, applies, and every person or organization legally responsible for his acts or omissions, is hereby exempted from tort liability for damages to any person who is required to maintain the coverage mandated by this act, or to any person who has a right to receive benefits under section 4 of this act as a result of bodily injury, arising out of the ownership, operation, maintenance or use of such automobile in this State, if the bodily injury, is confined solely to the soft tissue of the body and the medical expenses incurred or to be incurred by such injured person or the equivalent value thereof for the reasonable and necessary treatment of such bodily injury, is less than $200.00, exclusive of hospital expenses, X-rays and other diagnostic medical expenses. There shall be no exemption from tort liability if the injured party has sustained death, permanent disability, *65 permanent significant disfigurement, permanent loss of any bodily function or loss of a body member in whole or in part, regardless of the right of any person to receive benefits under section 4 of this act. Bodily injury confined solely to the soft tissue, for the purpose of this section means, injury in the form of sprains, strains, contusions, lacerations, bruises, hematomas, cuts, abrasions, scrapes, scratches, and tears confined to the muscles, tendons, ligaments, cartilages, nerves, fibers, veins, arteries and skin of the human body. [Emphasis added]
We are firmly convinced that the charge for a physician's initial examination preliminary to treatment is a medical expense incurred for the reasonable and necessary treatment of bodily injury and properly includible in calculating the $200 threshold referred to in N.J.S.A. 39:6A-8. The term "medical expense" as used in the act is defined to mean "expenses for medical treatment * * * and other diagnostic services, * * * medication and other reasonable and necessary expenses resulting from the treatment prescribed by persons licensed to practice medicine and surgery * * *." N.J.S.A. 39:6A-2. The initial examination of a patient is a basic preliminary step in the institution of medical treatment. It is difficult to imagine, with certain exceptions, that a physician would embark upon a course of treatment without first examining the patient and determining the nature and extent of his injuries. While such an examination is obviously diagnostic in nature, it is a proper, if not essential, preliminary step in treatment. The expense of the examination is really part and parcel of the over-all expense of the treatment. Therefore, it is distinguishable from hospital expenses, X-rays and other diagnostic expenses excluded from the calculation of the threshold amount by the act. Accordingly, we hold to the view that the trial judge erred in excluding from the calculation of the $200 threshold the $50 charge made by Dr. Fieber for the initial "Complete neurological and orthopaedic physical examination," thereby holding that the tort exemption denied plaintiff recovery.
While defendants claim that both the $25 charge for "Final Evaluation" and the total charges of $100 for office visits *66 and physiotherapy treatment on the same day were excludible by N.J.S.A. 39:6A-8 as diagnostic expenses, no ruling was made by the trial judge with respect to these claims. Obviously the validity of these claims should have been ruled upon in the first instance by the trial judge. Moreover, the posture of the record before us is such that a determination of these claims cannot be made now. The matter must be remanded to the trial court for further proceedings.
In this regard, we point out that the trial judge erred in ruling that the burden of proving the tort exemption rested upon defendant. In Fitzgerald v. Wright, 155 N.J. Super. 494 (decided on January 23, 1978), we held that the burden of proving compliance with the $200 threshold requirement in order to establish a prima facie case belonged to plaintiff. See also, Seskine v. Cone, 139 N.J. Super. 307 (Law Div. 1976). In our view, the holding of Fennell v. Ferreira, 133 N.J. Super. 63 (Law Div. 1975), relied upon by the trial judge here, as well as other trial court decisions (see also Falcone v. Branker, 135 N.J. Super. 137, 152 (Law Div. 1975); and Rescigno v. Picinich, 151 N.J. Super. 587, 597-599 (Law Div. 1977)), that the exemption from tort liability afforded by N.J.S.A. 39:6A-8 is one that plaintiff does not have to negate, but is rather an affirmative defense which defendant must prove, has been overruled by Fitzgerald v. Wright, supra. Thus, upon remand we direct that the trial judge follow the procedures outlined in Fitzgerald v. Wright, supra.
Accordingly, the summary judgment in favor of defendant is reversed and the matter is remanded to the trial court for further proceedings consistent with this opinion.