250 N.J. Super. 461 (1991)
595 A.2d 522
ANNIE M. OSWIN, PLAINTIFF-APPELLANT,
v.
GREGORY P. SHAW, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued May 30, 1991.
Decided August 2, 1991.
*462 Before Judges KING, R.S. COHEN and STERN.
*463 James J. Addonizio argued the cause for appellant (Rudnick, Addonizio & Pappa, attorneys; Thomas M. Comer, on the brief).
R. Peter Connell argued the cause for respondent (Donington, Leroe, Salmond & Luongo, attorneys).
Gerald H. Baker filed a brief and appeared for amicus curiae ATLA-NJ (Baker, Garber, Duffy & Pedersen, attorneys).
The opinion of the court was delivered by KING, P.J.A.D.
This case calls for the practical application of the limitation on the right to sue for non-economic loss under, the tort exemption, contained in N.J.S.A. 39:6A-8(a); L. 1988, c. 119 § 6, effective January 1, 1989. In more common parlance, this tort exemption has become known as the "verbal threshold." This threshold must be crossed before the plaintiff in a car accident may pursue a common-law tort claim for temporary or permanent disability and pain and suffering.
The statute was a pragmatic accommodation provoked by the spiraling costs and decreasing availability of automobile insurance, congestion in the courts, and the conviction of many that the judicial system should not give audience to minor automobile injury claims. Judge Muir has treated us to the history in Emmer v. Merin, 233 N.J. Super. 568, 572-574, 559 A.2d 845 (App.Div.), certif. denied, 118 N.J. 181, 570 A.2d 950 (1989), where we upheld the regulations promulgated by the Commissioner of Insurance pursuant to the statute. See N.J.A.C. 11:3-15.7. We will not repeat this history except to reiterate that the 1988 tort exemption statute was an effort to reform the "no-fault" system by "providing an effective way to materially reduce the number of auto-related personal injury cases litigated in the courts." Id. at 572, 559 A.2d 845. Consumer pressures led to legislative efforts to pass a law with significant premium reduction. Id. at 573, 559 A.2d 845.
*464 Ultimately, as Judge Muir explains, a legislative compromise was reached which eliminated the previous dollar thresholds, which had ranged from $200 to $1,500. On September 8, 1988 Governor Thomas Kean signed into law the act which included the "verbal threshold" we apply today. Id. at 574, 559 A.2d 845. The primary change in existing law required insurance consumers to elect between two types of coverage, literally column a or column b. N.J.S.A. 39:6A-8.1. The consumer would pay a lower premium for a policy which restricted recovery for non-economic loss, N.J.S.A. 39:6A-8(a), or a higher premium for a policy with an unrestricted right of recovery for non-economic loss, N.J.S.A. 39:6A-8(b). The plaintiff here, Annie Oswin, bought the lower price option a.
In the Governor's Reconsideration and Recommendation Statement that lead to the compromise which produced the final draft of the verbal threshold law, we find the reasons for the tort options. See Emmer v. Merin, 233 N.J. Super. at 573-574, 559 A.2d 845. We repeat the pertinent part of Governor Kean's Statement which was the prelude to the act because of its obvious importance to our understanding and application of the legislation to the problem before us.
[A] better compromise than that contained in the present bill, and one which can be supported and passed in both Houses, has been reached. That compromise is to make the verbal threshold the basic liability coverage in every automobile insurance policy the law of the land in New Jersey. At the same time, individual insureds will be permitted to opt for a monetary threshold, at a higher cost, if they so choose. I recommend adoption of a zero dollar threshold option. In effect, the zero dollar threshold will allow individuals to opt into a pure fault liability system, a choice which will be reflected in their higher premiums. The purpose of the zero dollar option is to remove the incentive to inflate medical bills  thereby placing an unnecessary burden on PIP coverage  in order to reach some specified monetary threshold. I believe the citizens of New Jersey recognize that when their medical bills are being promptly paid, without regard to fault, they lose next to nothing in relinquishing the ability to sue for pain and suffering for nonserious injuries only and, consequently, the vast majority will maintain the base verbal threshold. The verbal threshold contained in this recommendation is patterned after that in force in New York State (See New York Insurance Law §§ 5102, 5104). This verbal threshold specifically sets forth those injuries which will be considered "serious." Lawsuits for non-economic injuries, such as pain and suffering, will be allowed for *465 these enumerated "serious injuries" only. It is my intention that the term "serious injury," as defined in this recommendation, shall be construed in a manner that is consistent with the New York Court of Appeals' decision in Licari v. Elliot, 57 N.Y.2d 230, 455 N.Y.S.2d 570, 441 N.E.2d 1088 (1982). Whether a plaintiff has sustained a "serious injury" must be decided by the court, and not the jury. Otherwise, the bill's essential purpose of closing the courthouse door to all lawsuits except those involving bona fide serious injuries will be diluted and the bill's effectiveness will be greatly diminished. In addition, strict construction of the verbal threshold is essential; any judicial relaxation of this plain language will impede the intent of maintaining the substantial benefits of no-fault at an affordable price. [Id., 233 N.J. Super. at 573-574 n. 1, 559 A.2d 845; Governor's Reconsideration and Recommendation Statement to Senate, No. 2637-L. 1988, c. 119, see N.J.S.A. 17:28-1.4.]
We consider the Statement of the Chief Executive strong evidence of legislative intent where it led directly to the legislation we are called upon to construe. Communications from the Executive Branch to the Legislature may be reliable historical aids to legislative interpretation. Skeer v. EMK Motors, Inc., 187 N.J. Super. 465, 472, 455 A.2d 508 (App.Div. 1982), cited with approval, Fields v. Hoffman, 105 N.J. 262, 270, 520 A.2d 751 (1987); 2A Sutherland, Statutory Construction § 48.05 at 305-306 n. 7 (4th ed. 1984); see also Schulman v. O'Rielly-Lando, 226 N.J. Super. 626, 630, 545 A.2d 241 (App.Div. 1988).
As noted, Annie M. Oswin, the plaintiff here, chose N.J.S.A. 39:6A-8(a), the less expensive option. We are told by the amicus, ATLA-NJ, that 85% of the population have opted for the lower cost "verbal threshold" over the higher cost "no threshold" option. To qualify for damages for "non-economic loss" plaintiff had to prove that her claim fell within one of these nine categories:
Type 1: Death
Type 2: Dismemberment
Type 3: Significant disfigurement
Type 4: A fracture
Type 5: Loss of a fetus
Type 6: Permanent loss of use of a body organ, member, function or system
Type 7: Permanent consequential limitation of use of a body organ or member
Type 8: Significant limitation of use of a body function or system

*466 Type 9: A medically determined injury or impairment of a non-permanent nature which prevents the injured person from performing substantially all of the material acts which constitute that person's usual and customary daily activities for not less than 90 days during the 180 days immediately following the occurrence of the injury or impairment. [N.J.S.A. 39:6A-8(a)[[1]].]
*467 In this case plaintiff Oswin attempts to bring her claim within Type 8: "Significant limitation of use of a body function or system," although plaintiff and amicus also suggest that the claim might fit under Type 6 or 7 relating to "permanent loss of use or consequential limitation of use."
The matter came before the Law Division judge on defendant's motion for summary judgment. R. 4:46-2. The record consisted of plaintiff's answers to interrogatories, her doctor's report and bill, the hospital emergency room reports, and the police report. We reproduce her chiropractic medical report and bill in full as Appendix A & B. The defense relied exclusively on plaintiff's own documentation of her claim and used no independent material in support of the motion. Thus, there was no material issue or conflict of fact in the traditional sense on the motion for summary judgment. R. 4:46-2. The plaintiff's case stood or fell on her own proofs. The issue was one of law: did plaintiff get over the threshold? The Law Division judge said "no" and granted defendant's motion. Plaintiff on appeal contends that this legal error deprived her of the right to sue in tort for disability and pain and suffering.
Plaintiff was driving her car on June 24, 1989 in Red Bank, Monmouth County, when she was "rear-ended" by defendant Shaw. She is age 21 and works as a bank teller. She started suit in August 1989. In her answers to interrogatories dated January 6, 1990 she described her injury as:
Hyperflexion-Hyperextension Syndrome Cervical Myofascitis with Discogenic Radiculopathy.
In answer to interrogatory # 10 she stated:
10. Provide a detailed description of all injuries or conditions which are claimed to be permanent together with all present complaints.

*468 It is verily believed that the injuries sustained by the plaintiff are to be permanent in nature because the plaintiff still suffers pain and limitation of motion. As to present complaints, plaintiff is experiencing severe pains in the back of the cervical area along with pain in the lower back region.
In interrogatory # 2 plaintiff said "she lost four hours from work from the date of accident." The Riverview Medical Center for June 24 and 26, 1989 emergency room records recited complaints of neck pain and a bruise of scalp. X-ray reports were negative for fracture or dislocation. Plaintiff was given a soft cervical collar and told to use warm compresses and take Advil.
In answer to interrogatory # 12 plaintiff stated that a Dr. Otto Lehman, an orthopedic specialist, "took x-rays on September 18, 1989 for his examination." Plaintiff stated in answer to interrogatory # 13 "at the present time we do not have a copy of the results of the examination. We will supplement same accordingly." Dr. Lehman's report was never supplied and was not in the record in the Law Division.
The judge heard the defendant's motion for summary judgment on September 14, 1990. After argument he ruled for defendant saying:
Counsel, I understand the nature of this motion, no matter how you phrase it, soft tissue injury involving pain, suffering, discomfort and distress in an alleged limitations of motion does not, in the Court's opinion, fall within the provisions of the verbal threshold requirements. It's not a permanent loss of bodily function no matter how the doctor wants to phrase it. It's a soft tissue injury which was designed to be eliminated by the statute.
* * * * * * * *
My understanding is that under the law, that those type of claims were eliminated.
* * * * * * * *
My understanding, in reviewing the cases and the statute on soft tissue injury claims, which just result in limitations of motion, and/or pain and suffering, are eliminated under this statute.
With this background we examine the core of plaintiff's claim, the report and bill of her treating chiropractor, Dr. Hila. See Appendix A and B. His report and bill were dated February 26, 1990. He treated plaintiff from July 12 to December 6, *469 1989  a total of 32 visits  and billed her $1,510.[2] She presented herself with complaints of headaches and pain in the back of her neck. He noted some tenderness and spasm on palpation and some mild weakness in the left hand. He reported some limitation of cervical motion. Neurological tests were negative. Dr. Hila's x-rays were negative for fracture or dislocation. He did note a "foraminal encroachment between" C4-C5 and C5-C6. Neither the weakness in the left hand nor the "foraminal encroachment" on x-rays were specifically related to the accident of June 24 in Dr. Hila's report. The patient was treated with chiropractive manipulation for "correction of those osseous problems noted on x-ray." Presumably this treatment worked as she "was released from care on December 6, 1989." This is the "Summary" on discharge:
In my opinion, this patient has sustained a significant permanent injury from her accident of said date. This permanent injury is in the form of a significant limitation of use of a body function, which includes a loss of range of motion, accompanied by pain. Other limitations include: pain and limitation during athletic events, household work and chores; pain during sleep, resulting in loss of sleep; sitting or standing for extended periods of time causes pain and joint stiffness. This patient has experienced multiple re-exacerbation phases during treatment. It is further my impression that this patient will require continued treatment of active and supportive nature on an indefinite basis to alleviate any significant discomfort, which she may experience associated from this injury. Future medical care will be largely dependent upon activities in which this patient may engage.
This was plaintiff's claim in its entirety at the time of the grant of summary judgment on September 14, 1990.
Several points are evident. The claim does not fall within Type 9 which requires proof of a "non-permanent [injury] which prevents the injured person from performing substantially all of the material acts which constitute that person's usual and customary daily activities for not less than 90 days during the 180 days immediately following the occurrence of the injury or *470 impairment." There is no claim that her activities were limited to an extent qualifying her under this "non-permanent" injury category. We thus conclude that the report attempts to express a Type 8, or perhaps a Type 7, injury, i.e., "(8) significant limitation of use of a body function or system" or "(7) permanent consequential limitation of use of a body organ or member."
Was the Law Division judge justified in ruling that plaintiff did not meet the threshold where her chiropractor said she had "a significant permanent injury ... in the form of a significant limitation of use of a body function?" We think he was in light of the purpose of the statute and the nature of the claim presented. While the doctor's use of the statutory terms does not control, we agree with the plaintiff that the judge's articulated reason for granting summary judgment was off the mark. Just because the injury is to "soft tissues" does not bar the claim. Nothing in the nine categories in N.J.S.A. 39:6A-8(a) or the history so suggests that this is the test.
The real test, we conclude, is whether the injury has a serious impact on the plaintiff and her life. We are struck with the irony that plaintiff's injury clearly is not serious enough to qualify under Type 9 designed to include transitorily serious but "nonpermanent" injuries which disable a person for a substantial period of time but leave no lasting effect of consequence. The resolution of the issue of "serious injury" in this context is fraught with imprecision. But it must be made, and made by the judge in cases such as this if the statute is to have meaningful implementation. This is clear from the Governor's message which led to the legislative compromise manifested by the nine types or categories in subsection (a), see supra at 464-465, 595 A.2d at 523-524. All threshold questions of qualifications must be determined by a judge in advance of the anticipated tort trial. See Fitzgerald v. Wright, 155 N.J. Super. 494, 503-504, 382 A.2d 1162 (App.Div. 1978); see also Hill v. Cochran, 175 N.J. Super. 542, 546-547, 420 A.2d 1038 (App.Div. *471 1980); Kaplan v. Singer, 158 N.J. Super. 62, 64, 385 A.2d 864 (App.Div. 1978). We adhere to our statement in Fitzgerald v. Wright, 155 N.J. Super. at 504, 382 A.2d 1162, rendered in reference to the former monetary threshold in the No-Fault Law:
The question of qualification or threshold compliance as a precondition to prosecute a tort action is ultimately a legal one primarily for judicial determination within the framework of the legislative enactment. Where a fact dispute must be determined as an element of that decisional process it is more appropriate, efficient and less confusing for the judge to decide that dispute as well. We find no justifiable reason for insistence upon the awkward and cumbersome interjection of a jury in this sphere of fact-finding. [155 N.J. Super. at 504, 382 A.2d 1162.]
We reject the contention that the verbal threshold issue should be settled by a jury. We realize that other jurisdictions may disagree.[3] We think that the history of our State's concerns over the last several decades with this problem and the purpose and design of this legislation compels this conclusion. This solution serves to "advance efficient judicial administration" of the threshold issue, see Weinisch v. Sawyer, 123 N.J. 333, 345, 587 A.2d 615 (1991) (a claim against an agent and Allstate for reformation of a UM-UIM policy), and precludes "entangl[ing] litigants and courts in wasteful wrangling over the identity of the entity that is to determine the facts." Id. As observed in Fitzgerald v. Wright, 155 N.J. Super. at 503 n. 3, 382 A.2d 1162, where there is a genuine issue of fact this can be decided by the judge, as on an Evid. R. 8 hearing. We believe, as did the New York Court of Appeals in reviewing that state's cognate tort exemption threshold provision that "[i]t is incumbent upon the court to decide in the first instance whether plaintiff has a cause of action to assert within the meaning of the statute." Licari v. Elliot, 57 N.Y.2d 230, 237, 455 N.Y.S.2d 570, 573, 441 *472 N.E.2d 1088, 1091 (1982). Governor Kean specifically referred to this opinion in his message.
We now turn to the propriety of the grant of summary judgment here. We have noted that the "soft tissue" label is not a valid reason to reject plaintiff's claim under N.J.S.A. 39:6A-8(a). However, we concur with the Law Division judge's conclusion that, as a matter of law, these were not such "serious" injuries within the intent of N.J.S.A. 39:6A-8(a) sufficient to carry plaintiff across the threshold established by the Legislature. Plaintiff was treated conservatively 32 times with chiropractic manipulation and discharged on December 6, 1989. She got no further treatment up to the time judgment was granted in September 1990. Her usual and customary activities were surely not disrupted  she lost 1/2 day of work as bank teller. The articulated prognosis in Dr. Hila's report as to any "permanency" was indeed speculative. She did not produce the report of her examining physician, Dr. Lehman, so we cannot assume that would have helped her case. In his report plaintiff's chiropractor, Dr. Hila, does not relate any permanent restriction of cervical motion in degrees on discharge. Cf. Lopez v. Senatore, 65 N.Y.2d 1017, 494 N.Y.S.2d 101, 484 N.E.2d 130 (1985) (prevailing plaintiff had only 10 degrees of motion in cervical spine after one year of treatment and had objective evidence of ulnar nerve injury). Nor does he tell us if her weakness in the left hand persisted after his course of treatment. He only relates some generalized discomforts in his "discharge summary," all of which are among life's normal tribulations.
The record justified summary judgment on the threshold issue. We see no legal error in the conclusion that plaintiff did not establish a "serious" Type 7, 8 or 9 injury. True, her doctor recited the requisite litany under the statute in his discharge summary. The underlying facts, however, do not convince us that "a prima facie case of serious injury has been established which would permit a plaintiff to maintain a common-law cause of action in tort." Licari v. Elliot, 455 N.Y.S.2d *473 at 573, 441 N.E.2d. at 1091. As the Supreme Court said in an analogous context: "[I]n no event will a medical doctor's mere `parroting' of the patient's statement be sufficient." Saunderlin v. E.I. DuPont, 102 N.J. 402, 416, 508 A.2d 1095 (1986). Here, mere "parroting" of the threshold statute is not enough to meet the test. Plaintiff has the burden of producing a persuasive, documented showing that the threshold of "serious injury" has been met.[4] The proofs here did not meet this test.
Affirmed.
*474 
*475 
*476 
*477 
NOTES
[1] N.J.S.A. 39:6A-8 states in full:

One of the following two tort options shall be elected, in accordance with section 14.1 of P.L. 1983, c. 362 (C. 39:6A-8.1), by any named insured required to maintain personal injury protection coverage pursuant to section 4 of P.L. 1972, c. 70 (C. 39:6A-4):
a. Every owner, registrant, operator or occupant of an automobile to which section 4 of P.L. 1972, c. 70 (C. 39:6A-4), personal injury protection coverage, regardless of fault, applies, and every person or organization legally responsible for his acts or omissions, is hereby exempted from tort liability for noneconomic loss to a person who is subject to this subsection and who is either a person who is required to maintain the coverage mandated by this act, or is a person who has a right to receive benefits under section 4 of P.L. 1972, c. 70 (C. 39:6A-4), as a result of bodily injury, arising out of the ownership, operation, maintenance or use of such automobile in this State, unless that person has sustained a personal injury which results in death; dismemberment; significant disfigurement; a fracture; loss of a fetus; permanent loss of use of a body organ, member, function or system; permanent consequential limitation of use of a body organ or member; significant limitation of use of a body function or system; or a medically determined injury or impairment of a nonpermanent nature which prevents the injured person from performing substantially all of the material acts which constitute that person's usual and customary daily activities for not less than 90 days during the 180 days immediately following the occurrence of the injury or impairment; or
b. As an alternative to the basic tort option specified in subsection a. of this section, every owner, registrant, operator, or occupant of an automobile to which section 4 of P.L. 1972, c. 70 (C. 39:6A-4) applies, and every person or organization legally responsible for his acts or omissions, shall be liable for noneconomic loss to a person who is subject to this subsection and who is either a person who is required to maintain the coverage mandated by P.L. 1972, c. 70 (C. 39:6A:1 et seq.) or is a person who has a right to receive benefits under section 4 of that act (C. 39:6A-4), as a result of bodily injury, arising out of the ownership, operation, maintenance or use of such automobile in this State.
The tort option provisions of subsection b. of this section shall also apply to the right to recover for noneconomic loss of any person eligible for benefits pursuant to section 4 of P.L. 1972, c. 70 (C. 39:6A-4) but who is not required to maintain personal injury protection coverage and is not an immediate family member, as defined in section 14.1 of P.L. 1983, c. 362 (C. 39:6A-8.1), under an automobile insurance policy.
The tort option provisions of subsection a. of this section shall also apply to any person subject to section 14 of P.L. 1985, c. 520 (C. 39:6A-4.5).
The tort option provisions of subsections a. and b. of this section as provided in this 1988 amendatory and supplementary act shall apply to automobile insurance policies issued or renewed on or after January 1, 1989 and as otherwise provided by law.
[2] Reasonable expenses for chiropractic treatment are paid under the Personal Injury Protection feature of the no-fault policy. N.J.S.A. 39:6A-4; Elkins v. New Jersey Mfrs. Ins. Co., 244 N.J. Super. 695, 583 A.2d 409 (App.Div. 1990). These expenses may not be again sought in a tort action.
[3] For example, the Michigan Supreme Court concluded that "without further guidance from the Legislature ... the factfinder is better able to determine [if] plaintiff sustained a serious impairment of body function in those cases where reasonable minds could differ .... [t]he threshold issue should have been submitted to the jury." DiFranco v. Pickard, 427 Mich. 32, 398 N.W.2d 896, 925 (1986).
[4] These are some examples of cases where the New York courts found no significant limitation of use proved and dismissed the claims as not meeting the threshold: Scheer v. Koubek, 70 N.Y.2d 678, 518 N.Y.S.2d 788, 512 N.E.2d 309 (1987); Thrall v. City of Syracuse, 60 N.Y.2d 950, 471 N.Y.S.2d 51, 459 N.E.2d 160 (1983); Gootz v. Kelly, 140 A.D.2d 874, 528 N.Y.S.2d 446 (A.D. 1988); Evans v. Fuller, 136 A.D.2d 856, 523 N.Y.S.2d 701 (1988); Grotzer v. Levy, 133 A.D.2d 67, 518 N.Y.S.2d 629 (1987); Colvin v. Maille, 127 A.D.2d 926, 511 N.Y.S.2d 982 (1987); Lowe v. Bennett, 122 A.D.2d 728, 511 N.Y.S.2d 603 (1986); Padron v. Hood, 124 A.D.2d 718, 508 N.Y.S.2d 472 (1986); Caiazzo v. Crespi, 124 A.D.2d 623, 507 N.Y.S.2d 884 (1986); Berben v. Arain, 124 A.D.2d 379, 507 N.Y.S.2d 326 (1986); Kordana v. Pomellito, 121 A.D.2d 783, 503 N.Y.S.2d 198 (1986); Spangenberg v. Dombrowski, 114 A.D.2d 497, 494 N.Y.S.2d 410 (1985); Masi v. Kiss, 114 A.D.2d 442, 494 N.Y.S.2d 358 (1985); Scollo v. Martin, 112 A.D.2d 762, 492 N.Y.S.2d 264 (1985); Zoldas v. Louise Cab Corp., 108 A.D.2d 378, 489 N.Y.S.2d 468 (1985); Cangemi v. Cole, 107 A.D.2d 1027, 486 N.Y.S.2d 511 (1985); Bader v. Santana, 106 A.D.2d 858, 483 N.Y.S.2d 143 (1984); Post v. Broderick, 104 A.D.2d 977, 481 N.Y.S.2d 1 (1984); DeFilippo v. White, 101 A.D.2d 801, 475 N.Y.S.2d 141 (1984); Nolan v. Ford, 100 A.D.2d 579, 473 N.Y.S.2d 516 (1984); Poblet v. Parisi, 130 Misc.2d 521, 496 N.Y.S.2d 936 (Sup.Ct. 1985).