254 N.J. Super. 223 (1991)
603 A.2d 154
NICK SIRIOTIS, PLAINTIFF,
v.
GIUSEPPE GRAMUGLIA, DEFENDANT.
Superior Court of New Jersey, Law Division Bergen County.
Decided September 25, 1991.
*225 Davis Saperstein & Soloman, for plaintiff.
Melli & Wright, for defendant.
BOGGIA, J.S.C.
This matter comes before this court by way of defendant's, Giuseppe Gramuglia (hereinafter "Gramuglia"), motion for summary judgment seeking to dismiss plaintiff's complaint contending it is barred by N.J.S.A. 39:6A-8(a), the Verbal Threshold.
The facts may be summarized as follows:
On November 14, 1989, the plaintiff, Nick Siriotis (hereinafter "Siriotis"), and the defendant were involved in an automobile accident. The accident occurred at the intersection of Center Avenue and Bridge Plaza Street in Fort Lee, New Jersey. The plaintiff filed suit as a result of alleged injuries sustained in the accident. Plaintiff elected the Verbal Threshold in his automobile insurance policy.
The plaintiff alleges he was stopped at a red light located at the intersection when he was struck from the rear by the defendant's vehicle. The plaintiff's vehicle then struck an unidentified vehicle situated in front of him at the intersection. As a result of the impact, the plaintiff contends he sustained injuries to his neck and back. Plaintiff was taken to the *226 emergency room at Englewood Hospital where X-rays were taken that revealed no fractures or dislocations. Plaintiff lost no time from work and suffered no wage losses in regard to his injuries.
Plaintiff was treated for his injuries by Dr. Richard Tancer (hereinafter "Dr. Tancer"), from November 16, 1989 until May 2, 1990. Although Mr. Siriotis is no longer being treated, he alleges that he still suffers from pain and that his work and usual activities continued to be adversely affected.
In addition to being treated by Dr. Tancer, the plaintiff was examined by defendant's expert, Dr. Coyle. Dr. Coyle opined that the plaintiff suffered no permanent injuries as a result of the accident.
Defendant, Giuseppe Gramuglia, contends he is entitled to an order dismissing plaintiff's complaint, due to plaintiff's failure to meet the requirements for maintaining a cause of action pursuant to N.J.S.A. 39:6A-8(a), the Verbal Threshold.

I.
New Jersey Rules of Court, 4:46-2 sets forth the standard for summary judgment as follows:
The judgment or order sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law.
This standard was applied by the Supreme Court in Judson v. Peoples Bank and Trust of Westfield, 17 N.J. 67, 110 A.2d 24 (1954), where the Court explained that summary judgment is to be granted when there are no issues of material fact which require disposition at trial.
"But, (if) there is the slightest doubt as to the existence of a material issue of fact, the motion should be denied." Shanley & Fisher, P.C. v. Sisselman, 215 N.J. Super. 200, 211, 521 A.2d 872 (App.Div. 1987).

*227 II.
The application of the limitation on the right to sue for non-economic losses contained in N.J.S.A. 39:6A-8(a), the Verbal Threshold, has recently been addressed by the New Jersey Appellate Division in Oswin v. Shaw, 250 N.J. Super. 461, 595 A.2d 522 (App.Div. 1991). In Oswin, the trial judge dismissed a suit brought by an auto accident victim who suffered a neck injury when her car was hit from behind by another vehicle. The victim, Annie Oswin (hereinafter referred to as "Ms. Oswin"), had an insurance policy that included the Verbal Threshold. The treating chiropractor for Ms. Oswin reported that she had "sustained a significant permanent injury from her accident", which was "in the form of a significant limitation of the use of a body function." Id. at 469-470, 595 A.2d 522. The Appellate Division noted that the wording used by the chiropractor was very close to the language of the Verbal Threshold statute. Id. at 472-473, 595 A.2d 522.
The trial judge ruled that Ms. Oswin's injury was a "soft tissue" injury which he said was exactly the type of injury the Verbal Threshold law was designed to eliminate as a cause of action. Id. at 468, 595 A.2d 522.
The Appellate Division ruled that just because an injury is a "soft tissue" injury it does not bar it from a claim under the Verbal Threshold statute. Id. at 470, 595 A.2d 522. However, the court did find that Ms. Oswin's injuries did not entitle her to bring suit. The Court ruled that "[T]he underlying facts ... do not convince us that `a prima facie case of serious injury has been established which would permit a plaintiff to maintain defendant's common-law cause of action in tort'." Id. at 472-473, 595 A.2d 522 [citing Licari v. Elliott, 455 N.Y.S.2d 570, 573, 57 N.Y.2d 230, 441 N.E.2d 1088, 1091 (1982)].
In the opinion, the Court made other various findings crucial to the interpretation of N.J.S.A. 39:6A-8(a), the Verbal Threshold Statute:

*228 1) The Court concluded that all Threshold questions of qualifications of plaintiffs under the Verbal Threshold Statute must be determined by a Judge in advance of the anticipated tort trial. Id. [250 N.J. Super.] at 470-471 [595 A.2d 522]. The Court rejected the contention that the Verbal Threshold issue should be settled by a jury. Id. at 471 [595 A.2d 522]. The Court conceded that the resolution of the issue of whether an injury is "serious" is fraught with imprecision. Id. at 470 [595 A.2d 522]. In any event, the Court said, "[I]t must be made, and made by the Judge in cases such as this if the statute is to have meaningful implementation." Id. The Court based this ruling on what it considered a clear message from Governor Kean which it found to be legislative intent of the statute. Id.

2) The Court ruled that a medical doctor's "mere parroting" of the Threshold Statute in his/her report is not enough to establish a prima facie case of "serious injury" under the Statute. Id. at 473 [595 A.2d 522]. [citing Saunderlin v. E.I. DuPont, 102 N.J. 402, 416, 508 A.2d 1095 (1986)]. The Court ruled that the "plaintiff has the burden of producing a persuasive, documentation showing that the Threshold "serious injury" has been met." Id.

3) The Court held that the real test, "is whether the injury has a serious impact on the plaintiff and his or her life." Id. [250 N.J. Super.] of 470 [595 A.2d 522].
The above findings of the court were made under circumstances in which the defense "relied exclusively on plaintiff's own documentation of her claim and used no independent material in support of their motion" to dismiss plaintiff's complaint under the Verbal Threshold Statute. Id. at 467, 595 A.2d 522. The Appellate Division noted that the record before the trial court consisted of "plaintiff's answers to interrogatories, her doctor's report and bill, the hospital emergency room reports and the Police Report." Id. Due to the lack of any documentation or independent reports from the defense, the Appellate Division noted that, "there was no material issue or conflict of fact in the traditional sense on the motion for summary judgment." Id. The Appellate Division seems to indicate that if the plaintiff had met her burden of producing a "persuasive, documented showing that the Threshold of serious injury had been met", and the defense had produced a report contradicting those findings, that a "material issue or conflict of fact in the traditional sense on [a] motion for summary judgment" would have been presented. Id.

*229 III.
In the present case, the record before this court not only consists of plaintiff's answers to interrogatories, plaintiff's affidavit, Dr. Richard Tancer's medical report, and affidavit, medical bills, hospital emergency room bills and the police report, but it also contains a report by defendant's expert, Dr. Eugene J. Coyle.
A review of Dr. Tancer's medical report clearly indicates that the "mere parroting" of the Threshold Statute was not conducted. The report made findings of decreased range in motion of the cervical spine to rotation to the left of 20 degrees and to the right 30 degrees. The report also indicated side bending was diminished to the left by 15 degrees and to the right by 20 degrees. The report also made findings concerning plaintiff's legs where straight leg raising was 60 degrees to the left and 80 degrees to the right with pain, while normal straight leg raising is usually 90 degrees. The doctor's final diagnosis was as follows: "1) acute cervico-thoraco-lumbar sprain with myothesis; 2) persistent soft tissue changes to the above areas; and 3) permanent loss of motion of the lumbar spine." (See Appendix A).
Contrarily, Dr. Coyle concluded that, "this patient has reached the maximum plateau of recovery. There is no need for any additional treatment beyond this point and there is no permanency." (See Appendix B). This court also finds Dr. Coyle's report persuasive.
In comparing the two reports in this case, this court finds they clearly present a "material issue or conflict of fact in the traditional sense." Since this court has ruled that plaintiff has met its burden of producing a "persuasive, documented showing that the threshold of "serious injury" has allegedly been met, and due to defendant's contradictory report, this Court finds that summary judgment must be denied. The Appellate Division in Oswin clearly seems to indicate that the court's initial Threshold question is whether the doctor's report for the *230 plaintiff was a "persuasive, documented showing" that could meet the Threshold requirements. In the present case, this court finds that this has been met. However, due to the contradictory report provided by the defendant, material issues of fact are presented. As stated by the court in Hill v. Cochran, 175 N.J. Super. 542, 547, 420 A.2d 1038 (App.Div. 1980):
"(s)ince the meeting of the threshold is an element of the cause of action, it should be subject to the same procedural rules which govern the proof and determination of any other elemental fact of any other cause of action. There is no conceptual reason why the permanency threshold question should not be subject to these rules." 175 N.J. Super. at 547, 420 A.2d 1038.
This court recognizes that in Oswin, the Appellate Division held that "[A]ll threshold questions of qualifications must be determined by a judge." Oswin 250 N.J. Super. at 470, 595 A.2d 522. However, the circumstances presented in Oswin differ from the case before this Court. In Oswin, the Appellate Division clearly ruled that the "record justifies summary judgment" due to the speculative nature of plaintiff's medical report and the findings therein, and the lack of any credible, objective evidence supporting plaintiff's subjective Complaints. Id. at 472-473, 595 A.2d 522. In this case, material issues of fact exist as to plaintiff's injuries, ongoing pain and whether the injury has had a serious impact on the plaintiff and her life. Accordingly, this Court is precluded from determining, as a matter of law, whether plaintiff suffered a "serious injury". See R. 4:46-2. This court believes the above ruling is in accordance with the mandates set forth by the Appellate Division in Oswin.
Based on the foregoing, defendant, Giuseppe Gramuglia's motion for summary judgment is hereby denied.

IV.
In order to facilitate review in the likely event of defendant's appeal, this Court will now consider whether plaintiff's injuries qualify under the Verbal Threshold statute in the event that the *231 Appellate Division rules that this Court, in light of Oswin, was required to rule on whether plaintiff's injuries were "serious".
Under N.J.S.A. 39:6A-8(a), to qualify for damages for non-economic loss, plaintiff must prove that their claim falls within one of the following categories:
Type 1  Death;
Type 2  Dismemberment;
Type 3  Significant disfigurement;
Type 4  A fracture;
Type 5  Loss of a fetus;
Type 6  Permanent loss of a use of a body organ, member, function or system;
Type 7  Permanent consequential limitation of the use of a body organ or member;
Type 8  Significant limitation of use of a body function or system;
Type 9  A medically determined injury or impairment of a non-permanent nature which prevents the injured person from performing substantially all the material acts which constitute that person's usual and customary daily activities for not less than 90 days during the 180 days immediately following the occurrence of the injury or impairment.
Plaintiff contends that his injuries conform to the requirements of the Verbal Threshold set forth in Types 6, 7 and 8.

V.
This Court finds that the controlling language within Type 6 is the word "permanent", but notes that no adjectives such as "serious", "total" or "significant" are used by the legislature to qualify the term. Due to the lack of case law interpreting a Type 6 injury in New Jersey, New York cases must be utilized in order to further define and understand what a Type 6 injury consists of. However, a reading of these cases by this court clearly illustrates how diverse and inconsistent the conclusions by these Courts are, even where plaintiffs have complained of seemingly similar symptoms. What is clear by these cases in New York is that permanent limitation of partial motion of the neck and/or spine due to intermittent pain qualifies the litigant to sue as a matter of law. Bassett v. Romano, 126 A.D.2d 693, 511 N.Y.S.2d 298, 300 (1987), Hourigan v. McGarry, 106 A.D.2d 845, 484 N.Y.S.2d 243, 244 (1984); Mooney *232 v. Ovitt, 100 A.D.2d 702, 474 N.Y.S.2d 618, 620 (1984). However, the key element in proving a serious injury under New York case law resulting in a permanent loss is introduction of credible medical evidence supporting plaintiff's objective complaints. DeFilippo v. White, 101 A.D.2d 801, 475 N.Y.S.2d 141 (1984). Thus, a permanent loss of use requires injuries of an objective nature. Brennan v. Bauman, 107 A.D.2d 654, 484 N.Y.S.2d 25 (1985).
In the present case, the ongoing permanent pain and the limitation and/or restriction of motion of various body "members" of the plaintiff are clearly documented and specifically addressed in Dr. Tancer's report and affidavit. Accordingly, this Court finds as a matter of law that the plaintiff has met his burden of satisfying the qualifications of a Type 6 injury under the Verbal Threshold Statute.

VI.
The noticeable difference which distinguishes between a Type 6 injury and a Type 7 injury is the reference to function or system. Again, in determining whether a plaintiff has experienced a permanent, consequential loss of a use of a body organ or member, the Court must consider whether there is objective evidence of physical impairment resulting from the accident. Gray v. Steger, 150 A.D.2d 962, 541 N.Y.S.2d 645 (1989). Thus, there must be objective evidence and there must also be physical impairment. A minor, mild or slight limitation of use has been held to be insignificant within the meaning of the New York statute. Licari v. Elliott, 57 N.Y.2d 230, 455 N.Y.S.2d 570, 441 N.E.2d 1088 (1982).
In the present case, the court finds that Dr. Tancer's report specifically and objectively supports plaintiff's claim of significant pain, limitation of motion and restriction of normal every day activities. This court finds that, as a matter of law, that the limitation in motion suffered by plaintiff was not minor, mild or insignificant. Accordingly, this court finds that *233 plaintiff has met his burden of proving the requirements of a Type 7 injury under the Verbal Threshold statute.

VI.
The "significant limitation of a use of a body function or system" is a Type 8 injury. It is interesting to note that under a Type 8 injury, the legislature has added the word "significant". Furthermore, the area of concentration for Type 8 injury is a body function or system. To prove a significant limitation of use under New York law, the treating doctor must describe the examination, state the extent of limitation of use, present medical use of the limitation of daily activities as opposed to conclusionary allegations, and set forth objective medical findings. Hayes v. Riccardi, 97 A.D.2d 954, 468 N.Y.S.2d 748 (1983). In Robbie v. Ledeoux, 146 A.D.2d 764, 537 N.Y.S.2d 72 (1989), the Court outlined what is necessary to establish a prima facie case establishing a "serious injury". In Robbie, the plaintiff's doctor's report set forth the injuries, described the course of treatment, and identified the limitation of motion and expressed the opinion that there was a significant limitation of use.
In the present case, this court finds, as a matter of law, that the plaintiff's doctor's report satisfies this criteria. This court finds that plaintiff's injuries were not mild, minor limitations of use which could be categorized as insignificant. Rather, this court finds credible evidence indicating that plaintiff's performance of routine functions has been affected and that plaintiff's injuries do rise to the level of a "significant limitation of use of a body function or system". Accordingly, this Court finds as a matter of law that plaintiff has established a Type 8 injury under the Verbal Threshold statute.

VII.
In conclusion, this court finds that plaintiff has produced a persuasive, documented showing that the Threshold of serious *234 injury has allegedly been met and defendants have produced a report contradictory in findings. As a result, this Court finds material issues of fact. Accordingly, defendant's motion for summary judgment is hereby denied.
In order to facilitate review in the likely event of defendant's appeal due to the above findings of this Court, this Court also finds that plaintiff's injuries constitute a Type 6, Type 7 and Type 8 injury as a "matter of law" under the Verbal Threshold Statute.

APPENDIX A

DR. RICHARD TANCER, D.O.

209 WASHINGTON AVENUE

LITTLE FERRY, NEW JERSEY 07643

TELEPHONE (201) 641-3115
 Davis, Saperstein, and Salomon
 Attorneys at Law
 77 River St.
 Hackensack, NJ 07601
Dear Mr. Saperstein,
I first evaluated Mr. Nick Siriotis on November 16, 1989 when he was complaining of pain in the neck region, persistent headaches, and stiffness in the lower neck and back. He stated that these problems began after he was involved in a motor vehicle accident on 11/14/89 in Fort Lee, around 6:00 A.M. He was stopped at a red light when a car struck his vehicle in the rear. He felt his head go back then forward. He denied any loss of consciousness, but he was very anxious and upset. He was taken to Englewood Hospital Emergency Room, where he was evaluated. X-rays of the cervical spine were negative, and he was sent home on Motrin 600mg TID and was given a neck brace. He stated that he never had back or neck problems before this accident.
Physical examination revealed a well developed, well nourished 25 year old white male in moderate distress. He is right handed, and is a restaurant manager. Musculoskeletal evaluation revealed decreased range of motion of the cervical spin to rotation left 20° , right 30° . Sidebending was dimished to the left 15° , to the right 20° . Forward and backward bending were within normal limits, but pain was elicited at the pathologic barriers. Paraspinal spasm was noted bilaterally in the cervical and thoracic spine. Straight leg raising was 60° *235 left and 80° right, with pain. Neurological evaluation was essentially benign, with some weakness of the upper extremities secondary to pain.
Initial impression was acute cervico-lumbar sprain with myositis, soft tissue injury to these areas, and cephalgia secondary to the sprain. Mr. Siriotis was started on Flexeril and Ansaid for muscle relaxation and analgesia, and CT scans were obtained at Teaneck Radiology on November 20, 1989. The results were no evidence for an HNP or fracture on the cervical and lumbar spine films.
Mr. Siriotis returned to my office for treatment modalities which included hydrocollator packs, ultrasound, muscle stimulation, and osteopathic manipulation to the affected areas. At first, he was seen three times a week, and treatment was tapered down to once a Week in March. He was last seen on May 2, 1990. At that time, a final examination was performed which displayed continued loss of motion of the lumbar spine to straight leg raising 10° loss bilaterally and point tenderness of the thoracic spine, especially around the scapula. At this time, I feel that Mr. Siriotis will not benefit from any further treatment. He does have a persistent loss of motion of the lumbar spine along with soft tissue changes from this accident which I consider to be a significant and permanent limitation of use of the lumbosacral spine. He is currently a manager of a restaurant, and this injury has adversely affected his work capabilities.
 Final diagnosis: 1) Acute cervico-thoraco-lumbar
 sprain with myositis
 2) Persistent soft tissue changes
 to the above areas
 3) Permanent loss of motion of the
 lumbar spine
The patient was instructed that if the pain worsens he is to start on the medications which he was on in November. If the pain still persists, he was instructed to return to my office for reevaluation with the possibility of reinstatement of therapy.
If you have any further questions, please don't hesitate to contact me.
 Sincerely
 (s)
 Richard Tancer, D.O.

APPENDIX B

EUGENE J. COYLE, M.D.

319 Anderson Street

Hackensack, New Jersey 07601
 November 15, 1990
 Ms. Pam Bolline
 State Farm Insurance Company
 201 Route 17 North
 Rutherford, NJ 07070

*236 RE: NICK SIRIOTIS
To Whom It May Concern:
This patient, Nick Siriotis, presented himself in my office on November 14, 1990 with a history of having been involved in an automobile accident while driving his car on November 14, 1989. It is to be noted that the patient was not taken to the hospital from the scene of the accident.
The patient says that he went to Englewood Hospital after that and had x-rays taken of his neck. There was no evidence of fracture. He was given a cervical collar and some medication and was discharged.
The patient then came under the care of Dr. Tanzer of Little Ferry, New Jersey with whom he had physical therapy three times a week for approximately six months.
It is to be noted that no additional consultation or tests were requested by the treating physician.
When questioned as to his complaints at the present time, he says he has occasional lumbosacral pain especially in bad weather. He also has occasional pain in the region of his right scapula.
A complete orthopaedic examination is carried out on this patient in the following manner. The patient is asked to undress to the underwear and a gown is provided. The patient then walks on the heels and the toes and stands with the eyes closed and against resistance in order to substantiate normal balance.
The range of motion of the cervical spine and the lumbar spine is tested and also the range of motion of all the joints including the shoulders, elbows, wrists and the small muscle joints of the hands. Following this, the range of motion of the hips, the knees, the ankles and the small joints of the toes is tested. Next the body is palpated for any area of pain, tenderness or spasm.
Next the strength of the musculature of the body is tested and compared bilaterally. Particular attention is given to the intrinsic muscles of the hand, the ability to pinch, and the first dorsal interosseous muscle bilaterally.
The patient is then asked to lie down and the straight leg raising test is performed. Then the range of motion of the hips, the knees, and the ankles is tested in the recumbent position. Strength of the lower extremities is also tested and compared bilaterally, particular attention being given to dorsiflexion of the ankles and of the big toe.
The patient is then asked to sit up and examination of the eyes is carried out to find out if the pupils are equal and reactive to light, if the patient has normal peripheral vision and if there is any evidence of nystagmus.
Following this, a complete neurological examination is carried out in the following manner. The biceps, triceps, and wrist jerks are tested and evaluated bilaterally. Then, the knee jerks, the ankle jerks and the Babinski sign is tested bilaterally. Next the test for sensation is carried out for the integrity of the median, radial, ulnar and circumflex nerves of the upper extremities and for the anterior tibial, posterior tibial and sural nerves in the lower extremities. Particular attention is given to the sensation between the webs of the first and *237 second toes and to the lateral aspect of the foot and the lateral aspect of the thigh.
Lastly the skin is examined for any evidence of psoriasis and for the existence of any scars which may have been caused by old trauma or old surgical procedures or scars that are related to this particular entity. The patient's demeanor and attitude during the examination are evaluated and any meaningful and pertinent comments are noted.
In my opinion, the treatment rendered to date is both reasonable and necessary and causally related to the accident of November 14, 1989.
In my opinion, this patient has now reached the maximum plateau of recovery. There is no need for any additional treatment beyond this point and there is no permanency.
 Sincerely yours,
 (s)
 Eugene J. Coyle, M.D.
 EJC:ss