609 A.2d 415
ANNIE M. OSWIN, PLAINTIFF–APPELLANT, v. GREGORY P. SHAW, DEFENDANT–RESPONDENT.

Argued March 2, 1992—Decided July 30, 1992.

291

*James J. Addonizio* argued the cause for appellant (*Rudnick, Addonizio & Pappa,* attorneys; *Thomas M. Comer,* on the brief).

*R. Peter Connell* argued the cause for respondent (*Donington, Karcher, Leroe, Salmond, Luongo, Ronan & Connell,* attorneys; *R. Peter Connell* and *Susan S. Rankin,* on the brief).

*Gerald H. Baker* argued the cause for *amicus curiae,* ATLA–NJ (*Baker, Garber, Duffy & Pedersen,* attorneys).

The opinion of the Court was delivered by

CLIFFORD, J.

This appeal focuses on the procedure and the standard for determining compliance with the verbal threshold, *N.J.S.A.* 39:6A–8a, set forth in New Jersey's no-fault automobile-insurance statute, *N.J.S.A.* 39:6A–1 to –35. Plaintiff sustained soft-tissue injuries in an automobile accident. She sued defendant in the Law Division to recover noneconomic losses. The trial court entered summary judgment for defendant on the ground that the statute does not permit recovery of noneconomic losses due to soft-tissue injuries. The Appellate Division affirmed, 250 *N.J.Super.* 461, 595 *A.*2d 522 (1991), stating that although soft-tissue injuries may indeed be compensable under the statute, plaintiff's injuries did not meet the verbal-threshold standard. Significantly, that court also declared that the trial judge must determine all aspects of a plaintiff's compliance with the verbal threshold, including material disputes of fact.

We granted certification, 127 *N.J.* 552, 606 *A.*2d 365 (1991), and now hold that the correct procedure for verbal-threshold cases follows the summary-judgment model—that is, the court decides whether the injury alleged would, if proven, meet the requirements of one of the verbal-threshold categories, and the jury decides factual disputes about the nature and extent of the plaintiff's injuries. Because plaintiff's injuries do not fit within any of the verbal-threshold categories, we affirm the judgment of the Appellate Division.

I

■ To provide a context for this case, we begin with an overview of the statutory scheme. New Jersey adopted no-fault-insurance legislation with the goal of "compensating a larger class of citizens than the traditional tort-based system and doing so with greater efficiency and at a lower cost." *Emmer v. Merin*, 233 *N.J.Super.* 568, 572, 559 *A.*2d 845 (App. Div.) (citing Mario A. Iavicoli, *No Fault & Comparative Negligence in New Jersey* 20 (1973)), *certif. denied,* 118 *N.J.* 181, 570 *A.*2d 950 (1989). Under a pure no-fault system, a person injured in an automobile accident is compensated for those injuries without regard to fault. Inherent in an effective no-fault system is either a limitation on or the elimination of conventional tort-based personal-injury lawsuits. Jeffrey O'Connell & Robert H. Joost, *Giving Motorists a Choice Between Fault and No–Fault Insurance,* 72 *Va.L.Rev.* 61, 63–64 (1986). Many no-fault systems compensate injured persons for their economic losses—for example, medical expenses, lost income, essential services, and death benefits—under their own policies' personal-injury-protection coverage (hereinafter PIP). However, under those systems those who are injured may sue third parties for recovery of noneconomic loss stemming from certain types of injuries. New Jersey's statute follows that structure. See *N.J.S.A.* 39:6A-4, -8. Determining which injuries can give rise to such noneconomic-loss lawsuits is a problem that has plagued legislatures and courts in no-fault states.

The movement to adopt no-fault legislation in New Jersey was the result of ever-increasing automobile-insurance premiums. The New Jersey Automobile Reparation Reform Act, the state's original no-fault legislation, was enacted in 1972. *Emmer, supra,* 233 *N.J.Super.* at 572, 559 *A.*2d 845. That Act allowed lawsuits only when the insured had "sustained death, permanent disability, permanent significant disfigurement, permanent loss of any bodily function or loss of a body member in whole or in part," or "bodily injury [that is] confined solely to

the soft tissue of the body" that resulted in medical expenses in excess of a $200 threshold. *L.*1972, *c.* 70, § 8. That statute defined such injuries as "injuries in the form of sprains, strains, contusions, lacerations, bruises, hematomas, cuts, abrasions, scrapes, scratches, and tears confined to the muscles, tendons, ligaments, cartilages, nerves, fibers, veins, arteries and skin of the human body."

Because that limitation did not slow the rise in insurance premiums, the Legislature passed the New Jersey Automobile Insurance Freedom of Choice and Cost Containment Act of 1984. To resolve the lawsuit dilemma, that act introduced tort options: the insured would now choose between two monetary thresholds for soft-tissue injuries, either $200 or $1,500. *L.*1983, *c.* 362, § 14. The cost of insurance continued to spiral, however, and New Jersey's insurance premiums became among the highest in the United States. *Emmer, supra,* 233 *N.J.Super.* at 573, 559 *A.*2d 845.

In 1988, after much disagreement about how to resolve the problem, the Legislature arrived at a compromise measure that gave automobile owners two thresholds from which to choose. One option allowed lawsuits for injuries that resulted in medical expenses in excess of $750, and the other provided for a verbal threshold (that is, one that is defined by words rather than dollar amounts). *Senate Labor, Industry and Professions Committee Statement to S–2637* (June 16, 1988).

Then–Governor Kean conditionally vetoed that bill and issued a statement in which he expressed disapproval of any monetary threshold because of the incentive to pad medical bills. He advanced a different compromise, one that would give citizens the choice between a verbal threshold and a pure-fault liability system, *i.e.,* no threshold. The statement included his vision of the practical effect of the verbal threshold:

> The verbal threshold contained in this recommendation is patterned after that in force in New York State. (See New York Insurance Law §§ 5102, 5104[.]) This verbal threshold specifically sets forth those injuries which will be considered "serious." Lawsuits for non-economic injuries, such as pain and suffer-

ing, will be allowed for these enumerated "serious injuries" only. It is my intention that the term "serious injury," as defined in this recommendation, shall be construed in a manner that is consistent with the New York Court of Appeals' decision in *Licari v. Elliot[t]* [57 *N.Y.*2d 230, 455 *N.Y.S.*2d 570, 441 *N.E.*2d 1088] [ (1982) ]. Whether a plaintiff has sustained a "serious injury" must be decided by the court, and not the jury. Otherwise, the bill's essential purpose of closing the courthouse door to all lawsuits except those involving bona fide serious injuries will be diluted and the bill's effectiveness will be greatly diminished. In addition, strict construction of the verbal threshold is essential; any judicial relaxation of this plain language will impede the intent of maintaining the substantial benefits of no-fault at an affordable price.

[Governor's Reconsideration and Recommendation Statement 3–4 (Aug. 4, 1988) (citation omitted) [hereinafter *Governor's Statement*].]

The final legislation, however, made no reference whatsoever to the adjudication of disputed factual issues.

The Governor signed the Act on September 8, 1988, and it took effect on January 1, 1989. Persons buying automobile insurance now choose between two types of coverage regarding the right to seek recovery of noneconomic losses resulting from automobile-related injuries. *N.J.S.A.* 39:6A–8. The first, the "verbal threshold," allows recovery for noneconomic losses resulting only from those personal injuries that fit into one of nine specified categories. *N.J.S.A.* 39:6A–8a. (Those nine categories are listed *infra* at 315, 609 *A.*2d at 427).

The alternative to the verbal-threshold option is the traditional tort option, which allows unrestricted recovery of noneconomic damages. *N.J.S.A.* 39:6A–8b. The insured who elects that option pays a higher premium in return for the unlimited right to sue. See *N.J.S.A.* 39:6A–8.1a. An insured who makes no election is deemed to have chosen the verbal threshold. *N.J.S.A.* 39:6A–8.1b.

## II

### –A–

This litigation originated with a collision on June 24, 1989, when the automobile driven by plaintiff, Annie Oswin, was

struck in the rear by a vehicle operated by defendant, Gregory Shaw.

Plaintiff went to the emergency room at a local hospital on the day of the accident, and again two days later. X-rays of her spine, taken during her second visit, were negative. Complaining of headaches and neck pain, she began a course of treatment with Dr. Gregory Hila, a chiropractor. Between July 12, 1989, and December 4, 1989, she visited Dr. Hila thirty-two times for a program of "conservative chiropractic management." Dr. Hila's diagnosis was cervical myofascitis with discogenic radiculopathy and hyperflexion-hyperextension syndrome. She also saw Dr. Otto Lehman, an orthopedist, on September 18, 1989. Dr. Lehman took X-rays, which also were negative. Oswin missed a total of only four hours from work as a bank teller.

On August 4, 1989, Oswin filed a complaint against Shaw, claiming that as a result of the accident she had "sustained severe and permanent internal and external bodily injuries" resulting in present and future pain and suffering and in the expenditure of "substantial sums of money for medical care and treatment."

In the course of discovery plaintiff supported her claim with Dr. Hila's medical report, which recited Oswin's complaints; the tests he had used in determining her condition; and his findings. The report indicated that Dr. Hila had noted tenderness and spasm on palpation and slight weakness of the left hand. The report also listed and quantified Oswin's limitations in six specified types of motion: flexion, extension, right rotation, left rotation, right lateral bending, and left lateral bending. The chiropractor reported respective ranges of motion of thirty degrees (he said that forty-five degrees is normal), thirty-two degrees (fifty-five degrees is normal), forty degrees (seventy degrees is normal), forty-one degrees (seventy degrees is normal), twenty-nine degrees (forty degrees is normal), and twenty-eight degrees (forty degrees is normal). Dr. Hila also re-

ported that although X-rays revealed no fractures or dislocations, they did show a "foraminal encroachment between the fourth and fifth and the fifth and sixth cervical vertebrae."

In a summary Dr. Hila stated that Oswin has "sustained a significant permanent injury from her accident of said date. This permanent injury is in the form of a significant limitation of use of a body function, which includes a loss of range of motion, accompanied by pain." He reported further that Oswin's condition affected her ability to participate in athletic activities and to perform household chores, and limited her ability to sleep or to sit or stand for extended periods. Nothing else in the report connected Oswin's injuries to the accident. It concluded that Oswin will require "active" treatment "on an indefinite basis to alleviate any significant discomfort * * *." The chiropractor also included a copy of the bill for his services, totalling $1,510.00. We presume that Oswin's own PIP coverage reimbursed her for those medical expenses. See *N.J.S.A.* 39:6A–4; *Elkins v. New Jersey Manufacturers Insurance Co.,* 244 *N.J.Super.* 695, 583 *A.*2d 409 (App.Div.1990).

Shaw moved for summary judgment, asserting that the language of the verbal-threshold provision indicates a clear intent to eliminate all lawsuits stemming from soft-tissue injuries. Defendant argued that because Oswin had elected the verbal threshold when purchasing her automobile insurance, her complaint failed to state a claim on which relief could be granted. He did not submit any evidence to rebut Dr. Hila's report. The trial court entered summary judgment for Shaw.

Oswin argued before the Appellate Division that the statute does not, as Shaw had contended, bar all soft-tissue claims, and that the issue of whether Oswin's injury was sufficiently serious to allow recovery under the statute was a factual question that should have been presented to a jury. In response, Shaw noted that Oswin had freely chosen the verbal threshold over the more-expensive no-threshold option and that the trial court's ruling was consistent with the intent underlying the

verbal-threshold provision, namely, to limit the right to sue for noneconomic loss.

The Appellate Division affirmed, 250 *N.J.Super.* 461, 595 *A.*2d 522. The court rejected defendant's contention that the verbal threshold forecloses all claims based on soft-tissue injuries: "Just because the injury is to 'soft tissues' does not bar the claim. Nothing in the nine categories in *N.J.S.A.* 39:6A–8(a) or the history so suggests that this is the test." *Id.* at 470, 595 *A.*2d at 522. The Appellate Division rejected the traditional summary-judgment standard and held that the trial judge is to decide all issues regarding whether a plaintiff's injury is "serious," including disputed issues of fact; "where there is a genuine issue of fact[,] this can be decided by the judge, as on an *Evid.R.* 8 hearing." *Id.* at 471, 595 *A.*2d at 522. *Evidence Rule* 8(1) requires that the court make findings "[w]hen the qualification of a person to be a witness, or the admissibility of evidence, or the existence of a privilege is stated in these rules to be subject to a condition, and the fulfillment of the condition is in issue * * *."

In deciding that the entire determination should be made by the trial court, the Appellate Division relied on so much of the Governor's Statement, *supra*, as declares that "[w]hether a plaintiff has sustained a 'serious injury' must be decided by the court, and not the jury." 250 *N.J.Super.* at 465, 595 *A.*2d 522. The Appellate Division also relied on *Licari v. Elliott*, 57 *N.Y.*2d 230, 455 *N.Y.S.*2d 570, 573, 441 *N.E.*2d 1088, 1091 (1982), the decision cited in the Governor's Statement. *Id.* at 471–72, 595 *A.*2d 522.

The court below reasoned that judicial resolution of the verbal-threshold issue "serves to 'advance efficient judicial administration.'" *Ibid.* (quoting *Weinisch v. Sawyer*, 123 *N.J.* 333, 345, 587 *A.*2d 615 (1991)). Noting that "[t]he resolution of the issue of 'serious injury' * * * is fraught with imprecision," the court decided that the criterion for determining whether an injury meets the verbal threshold is "whether the injury has a

serious impact on the plaintiff and her life." *Id.* at 470, 595 *A.*2d 522.

In applying its rule to the facts, the Appellate Division agreed with the trial court's determination that the injuries did not fall into any of the types of injury set out in the verbal-threshold statute. *Id.* at 472, 595 *A.*2d 522. It noted that Dr. Hila's report was too vague and merely parroted the statutory language. The court concluded that Oswin had not met "the burden of producing a persuasive, documented showing that the threshold of 'serious injury' has been met." *Id.* at 473, 595 *A.*2d 522.

–B–

During the pendency of this appeal, two New Jersey courts have issued opinions on the issue that this appeal projects. In *Siriotis v. Gramuglia*, 254 *N.J.Super.* 223, 603 *A.*2d 154 (1991), the Law Division applied the summary-judgment standard, under which the jury resolves factual disputes and the court determines whether the injuries meet the verbal threshold.

The *Siriotis* court distinguished *Oswin* by noting that in *Oswin* the defendant had not challenged the plaintiff's documentation of her injuries. The court relied on the Appellate Division's indication that if the plaintiff had made a " 'persuasive, documented showing that the Threshold of serious injury had been met', and the defense had produced a report contradicting those findings, * * * a 'material issue or conflict of fact in the traditional sense on [a] motion for summary judgment' would have been presented." 254 *N.J.Super.* at 228, 603 *A.*2d 154 (quoting *Oswin, supra,* 250 *N.J.Super.* at 473, 467, 595 *A.*2d 522). Thus, the *Siriotis* court apparently misread *Oswin* as adhering to a summary-judgment standard rather than as formulating a rule in which the judge makes all factual determinations in respect of the verbal threshold. In *Siriotis,* the court stated that Nick Siriotis's medical report was no " 'mere parroting' " of the statutory language, but

made findings of decreased range in motion of the cervical spine to rotation to the left of 20 degrees and to the right 30 degrees. The report also indicated side bending was diminished to the left by 15 degrees and to the right by 20 degrees. The report also made findings concerning plaintiff's legs where straight leg raising was 60 degrees to the left and 80 degrees to the right with pain, while normal straight leg raising is usually 90 degrees. The doctor's final diagnosis was as follows: "1) acute cervico-thoraco-lumbar sprain with myothesis; 2) persistent soft tissue changes to the above areas; and 3) permanent loss of motion of the lumbar spine."

[*Id.* at 229, 603 *A.*2d 154.]

Furthermore, in *Siriotis* the court noted that the defendant had submitted a report by an examining physician, who had stated that the plaintiff needed no further treatment. *Ibid.* The court found a dispute of material fact sufficient to warrant sending the case to the jury. *Ibid.*

More recently, in *Brown v. Puente*, 257 *N.J.Super.* 203, 608 *A.*2d 377 (1992), the Appellate Division held that when, as in the case before it, a case involves a disputed question of fact on the nature and extent of plaintiff's injuries, the court must follow the summary-judgment model: the jury, rather than the court, should resolve that factual dispute. *Id.* at 208, 608 *A.*2d 377. The court determined that the jury should resolve factual disputes concerning the nature and extent of the plaintiff's injuries, notwithstanding the Governor's Statement. *Id.* at 211–13, 608 *A.*2d 377.

### III

#### –A–

In resolving this appeal we must answer two questions: (1) whether the verbal-threshold issue is to be decided by the court or instead by the jury; and (2) whether Annie Oswin's disability falls into one of the nine categories of the verbal-threshold statute. Part III of this opinion addresses the first question, and Part IV deals with the second.

Plaintiff contends that the summary-judgment rule is appropriate in the context of the "verbal threshold" test, and that because the determination of whether plaintiff has met the verbal threshold is a factual one, the jury must decide it.

Defendant replies that the Governor's Statement indicates a legislative intent that the court resolve all verbal-threshold questions, and that the need for efficient judicial administration compels that result. Defendant, not surprisingly, agrees with the Appellate Division's finding that Oswin's injuries did not qualify for recovery under the verbal-threshold statute.

Other states with verbal-threshold statutes similar to New Jersey's adhere to the summary-judgment approach. Most notable is New York, whose verbal-threshold scheme is strikingly similar to New Jersey's, except that New York's verbal threshold is mandatory. New York's statute allows recovery for noneconomic loss only if the plaintiff has suffered a "serious injury," *N.Y.Ins.Law* § 5104(a) (Consol.1985); and the statute defines "serious injury" as

> a personal injury which results in death; dismemberment; significant disfigurement; a fracture; loss of a fetus; permanent loss of use of a body organ, member, function or system; permanent consequential limitation of use of a body organ or member; significant limitation of use of a body function or system; or a medically determined injury or impairment of a non-permanent nature which prevents the injured person from performing substantially all of the material acts which constitute such person's usual and customary daily activities for not less than ninety days during the one hundred eighty days immediately following the occurrence of the injury or impairment.
>
> [*N.Y.Ins.Law* § 5102(d) (Consol.1985).]

The foregoing language is almost identical to that in the New Jersey statute, see *infra* at 315, 609 *A*.2d at 427. The important distinction between the two schemes is that although the categories in the New York statute serve to define "serious injury," the New Jersey statute contains no specific requirement of "serious injury," resorting instead to only the injury-type categories to designate the types of injury that meet the threshold.

In *Licari v. Elliott, supra,* the New York Court of Appeals held that "[i]t is incumbent upon the court to decide in the first instance whether plaintiff has a cause of action to assert within the meaning of the statute." 455 *N.Y.S.*2d at 573, 441 *N.E.*2d at 1091. The court explained that New York's no-fault statute had diminished the plaintiff's right to bring a personal-injury

action against a defendant whose negligence had caused the plaintiff to suffer bodily injury; "[t]hus, to the extent that the Legislature has abrogated a cause of action, the issue is one for the court, in the first instance where it is properly raised, to determine whether the plaintiff has established a prima facie case of sustaining serious injury." *Ibid.* The court continued:

> The result of requiring a jury trial *where the injury is clearly a minor one* would perpetuate a system of unnecessary litigation. * * * Thus, we believe the Legislature intended that the court should decide the threshold question of whether the evidence would warrant a *jury finding* that the injury falls within the class of injuries that, under no-fault, should be excluded from judicial remedy. If it can be said, *as a matter of law,* that plaintiff suffered no serious injury within the meaning of [the no-fault statute], then plaintiff has no claim to assert and there is nothing for the jury to decide.
>
> [*Id.* 455 *N.Y.S.*2d at 574, 441 *N.E.*2d at 1092 (emphasis added).]

We conclude that the New York rule unquestionably requires courts to follow the summary-judgment standard—a conclusion that finds strong support in the cases following *Licari.* New York, however, has heightened the requirements for the showing that a plaintiff must make to reach the jury. The question of whether an injury is "serious" is a matter for the court to decide, but disputes regarding the nature and extent of the injury will survive summary judgment only if the plaintiff has submitted objective medical evidence to support his or her claims. *E.g., Lopez v. Senatore,* 65 *N.Y.*2d 101, 494 *N.Y.S.*2d 101, 102, 484 *N.E.*2d 130, 131 (1985) (finding evidence sufficient to survive defendant's motion for summary judgment; plaintiff had submitted treating physician's affidavits, accompanied by exhibits, identifying limitation of neck motion to ten degrees, and concluding that injury was "significant").

Michigan, with a verbal-threshold statute similar to New Jersey's, allows recovery for noneconomic losses "only if the injured person has suffered death, serious impairment of body function, or permanent serious disfigurement." *Mich.Stat. Ann.* § 24.13135(1) (Callaghan 1987). In *Cassidy v. McGovern,* 415 *Mich.* 483, 330 *N.W.*2d 22 (1982), the Michigan Supreme Court adopted a standard similar to that of *Licari,* holding that "when there is no factual dispute regarding the nature and

extent of a plaintiff's injuries, the question of serious impairment of body function shall be decided as a matter of law by the court." *Id.* 330 *N.W.*2d at 29. (*Cassidy* was decided only two months after *Licari*, and does not cite the New York case.)

Four years later the same court, in *DiFranco v. Pickard*, 427 *Mich.* 32, 398 *N.W.*2d 896, 910 (1986), modified the portion of *Cassidy* that applied a pure summary-judgment standard and replaced it with a broader rule: the question of whether an injury fits the statutory requirement is one of fact for the jury to decide. "If reasonable minds can differ as to whether the plaintiff suffered a serious impairment of body function, the issue must be submitted to the jury, even if the evidentiary facts are undisputed." *Ibid.* Thus, Michigan differs from New York: in Michigan the jury decides all verbal-threshold issues, even when no material disputes of fact exist. To survive a summary-judgment motion the plaintiff generally needs medical testimony, *id.* 398 N.W.2d at 918, but that testimony can be based on subjective complaints of pain, *ibid.*

The dissent in *DiFranco* criticized the majority holding for eliminating *Cassidy*'s aids to construction without substituting others. "Henceforth, decisions as to what constitutes a serious impairment of body function will be rendered by juries and no body of law will have been or will be created in the future to aid the bench and bar." *Id.* 398 *N.W.*2d at 926 (Williams, C.J., dissenting).

Florida's verbal-threshold statute also includes a threshold that conditions recovery on "significant" or "permanent" injury:

> In any action of tort brought against the owner, registrant, operator, or occupant of a motor vehicle, * * * a plaintiff may recover damages in tort for pain, suffering, mental anguish, and inconvenience because of bodily injury, sickness, or disease arising out of the ownership, maintenance, operation, or use of such motor vehicle only in the event that the injury or disease consists in whole or in part of:
>
> (a) Significant and permanent loss of an important bodily function.
>
> (b) Permanent injury within a reasonable degree of medical probability, other than scarring or disfigurement.

(c) Significant and permanent scarring or disfigurement.

(d) Death.

[*Fla.Stat.Ann.* § 627.737(2) (West 1984).]

Although Florida's highest court has yet to rule on the question, its District Court of Appeal requires that the jury resolve disputes related to the statutory "permanence" requirement. *E.g., Rivero v. Mansfield,* 584 *So.*2d 1012, 1014 (1992); *Powell v. Napolitano,* 578 *So.*2d 747, 748 (1991) ("the existence of permanent injury is ordinarily a factual [question] for the jury"); *Laberge v. Vancleave,* 534 *So.*2d 1176, 1177 (1988) ("Regardless of the quality of the experts' testimony, * * * the question of whether a plaintiff has suffered a permanent injury is one for the jury."); *Martin v. Young,* 443 *So.*2d 293, 294 (1983) (no-fault threshold issue "is ordinarily a factual one for submission to a jury" but directed verdict was proper absent any "conflict in the medical evidence").

## –B–

In *Judson v. Peoples Bank & Trust Co.,* 17 *N.J.* 67, 110 *A.*2d 24 (1954), this Court articulated the following standard for summary judgment: "whether there is a genuine issue as to a material fact * * *." *Id.* at 73, 110 *A.*2d 24. The New Jersey Court *Rules* have adopted the *Judson* standard:

[Summary judgment] shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is *no genuine issue as to any material fact* challenged and that the moving party is entitled to a judgment or order as a matter of law. [*R.* 4:46–2 (emphasis added).]

The summary-judgment procedure exists to encourage efficiency; it "aims at 'the swift uncovering of the merits and either their effective immediate disposition or their advancement toward prompt resolution by trial.' " *Judson, supra,* 17 *N.J.* at 74, 110 *A.*2d 24 (quoting Charles E. Clark, *The Summary Judgment,* 36 *Minn.L.Rev.* 567, 579 (1952)); *accord Maher v. New Jersey Transit Rail Operations, Inc.,* 125 *N.J.* 455, 477, 593 *A.*2d 750 (1991); *Devlin v. Surgent,* 18 *N.J.* 148, 154, 113 *A.*2d 9 (1955).

We choose to follow the New York approach and apply the summary-judgment model to verbal-threshold determinations. "The role of the judge in [summary-judgment] procedure is to determine whether there is a genuine issue as to a material fact, *but not to decide the issue if he finds it to exist.*" *Judson, supra,* 17 *N.J.* at 73, 110 *A.*2d 24 (emphasis added). The Court emphasized that "a party opposing a motion is not to be denied a trial unless the moving party sustains the burden of showing clearly the absence of a genuine issue of material fact." *Id.* at 74, 110 *A.*2d 24. However, the summary-judgment procedure cannot be allowed to subsume the factfinding process. "Summary judgments should not be granted where the adjudication of such a motion would constitute what is in effect a trial by affidavit on issues of fact. Where there is a genuine disputed issue of fact, the issues must be resolved in a plenary hearing." *Devlin v. Surgent, supra,* 18 *N.J.* at 154, 113 *A.*2d 9 (citations omitted).

We reject Michigan's approach because it fails to distinguish issues of fact from those of law. The verbal-threshold determination consists of two questions: (1) whether under any view of the plaintiff's injuries they can be said to fall within at least one of the nine categories that New Jersey's statute specifies, and (2) if so, whether the evidence before the court on a motion for summary judgment demonstrates a material dispute of fact regarding the nature and extent of the plaintiff's injuries. If on a summary-judgment motion the court decides, from whatever medical reports and other evidence submitted in support of and in opposition to the motion, that the injuries do not, as a matter of law, carry the plaintiff's case across the verbal threshold, then the defendant will prevail on the motion. If however the plaintiff's medical proofs survive that initial test and the court discovers, from all the information presented on the motion, a legitimate factual dispute over the nature and extent of the injuries, then resolution of that dispute is of course for the jury. We would anticipate

the use of special interrogatories to ascertain the jury's conclusion.

–C–

■ Several factors lead us to our result. Although the Governor's wish that a certain type of case be removed from the conventional tort system is abundantly clear, and although we agree with the court below that an Executive Statement is "strong evidence of legislative intent where it led directly to the legislation we are called upon to construe," 250 *N.J.Super.* at 465, 595 *A.*2d 522 (citing *Fields v. Hoffman,* 105 *N.J.* 262, 270, 520 *A.*2d 751 (1987); *Schulman v. O'Reilly–Lando,* 226 *N.J.Super.* 626, 630, 545 *A.*2d 241 (App.Div.1988); *Skeer v. EMK Motors, Inc.,* 187 *N.J.Super.* 465, 472, 455 *A.*2d 508 (App.Div. 1982)); *accord* 2A Norman J. Singer, *Sutherland Statutory Construction* § 48.05 (5th ed. 1992), nevertheless we cannot avoid the eloquent silence of the statute concerning where the decision-making function reposes. Despite the Governor's Statement, the final enactment still did not address the question of allocating the verbal-threshold decision. Our task, then, is to determine the intent of the Legislature in the face of that Statement.

Although the Governor's purpose was to remove from the jury any consideration of the verbal-threshold issue ("Whether a plaintiff has sustained a 'serious injury' must be decided by a court, and not the jury."), we nevertheless are presented with legislation that makes no reference whatsoever to a judge-determination approach. The Governor's preference for that approach is manifest, but that preference was reflected in neither the Governor's conditional veto nor in the statute that the Legislature ultimately enacted. The Legislature simply did not address the question of allocating the verbal-threshold decision. What the Legislature did, however—and did with unmistakable clarity—was base its statute on New York's. In doing so it adopted the dispute-resolution methodology set forth

in the leading New York case that interprets the statute, *Licari v. Elliott, supra,* 455 *N.Y.S.*2d 570, 441 *N.E.*2d 1088. As the Appellate Division concluded in *Brown v. Puente, supra,* the Legislature intended to incorporate "the basic New York procedural scheme." 257 *N.J.Super.* at 212, 608 *A.*2d 377 (citing *Lopez v. Senatore, supra,* 494 *N.Y.S.*2d 101, 484 *N.E.*2d 130; *Morsellino v. Frankel,* 161 *A.D.*2d 748, 556 *N.Y.S.*2d 103 (1990); *Swenning v. Wankel,* 140 *A.D.*2d 428, 528 *N.Y.S.*2d 130 (1988)).

That conclusion finds support in the proposition, often embraced by this State's courts, that legislative adoption of a foreign statute includes judicial interpretations of that statute as of the time of adoption. "A legislative enactment patterned after a statute of another state is ordinarily adopted with the prior constructions placed on it by the highest court of the parent jurisdiction." *Van Horn v. William Blanchard Co.,* 88 *N.J.* 91, 97, 438 *A.*2d 552 (1981); *accord Todd Shipyards Corp. v. Township of Weehawken,* 45 *N.J.* 336, 343, 212 *A.*2d 364 (1965); *Bollinger v. Wargaraw Building Supply Co.,* 122 *N.J.L.* 512, 519, 6 *A.*2d 396 (E. & A.1939). Given the fact that our statute contains no instructions allocating the determination of disputed facts, and in fact closely tracks the New York legislation, we are confident that the Legislature intended to adopt New York's procedural structure.

In 1989, when New Jersey's verbal-threshold statute took effect, *Licari* was seven years old, and New York's highest and middle-level appellate courts had heard a plethora of cases, all adopting a summary-judgment standard in resolving verbal-threshold issues. See, *e.g., Lopez v. Senatore, supra,* 494 *N.Y.S.*2d 101, 484 *N.E.*2d 130; *Gootz v. Kelly,* 140 *A.D.*2d 874, 528 *N.Y.S.*2d 446 (App.Div.1988); *Zoldas v. Louise Cab Corp.,* 108 *A.D.*2d 378, 489 *N.Y.S.*2d 468 (App.Div.1985).

We also agree with the Appellate Division's further observation in *Brown* that construing the verbal-threshold statute as requiring a summary-judgment standard comports with the

widespread practice in other verbal-threshold states of remitting "genuinely contested threshold issues" to the jury. 257 *N.J.Super.* at 213, 608 *A.*2d 377 (citing *Mighty Nat'l Exterminators, Inc. v. Powers*, 434 *So.*2d 361 (Fla.Dist.Ct.App.1983); *Hansen v. White*, 190 *Ga.App.* 596, 379 *S.E.*2d 536, *cert. denied*, 190 *Ga.App.* 897 (1989); *Parker v. Nakaoka*, 68 *Haw.* 557, 722 *P.*2d 1028 (1986); *Stang v. Caragianis*, 243 *Kan.* 249, 757 *P.*2d 279 (1988); *Phelps v. MacIntyre*, 397 *Mass.* 459, 491 *N.E.*2d 1067 (1986)). Our own research has failed to uncover any jurisdiction that applies a rule allocating to the court the determination of disputed facts in verbal-threshold cases.

We therefore conclude, as did the Appellate Division in *Brown v. Puente*, that the *Licari* standard applies, that is, the court will make the threshold determination when no disputed factual issues are present.

■ One canon of statutory construction lends further support to our interpretation of the verbal-threshold. That statutes in derogation of the common law are to be construed narrowly is a foundational rule. Doubt about the meaning of such statutes should be resolved in favor of

> the effect which makes the least rather than the most change in the common law. The rule has been declared by the United States Supreme Court, as follows: "No statute is to be construed as altering the common law, farther than its words import. It is not to be construed as making any innovation upon the common law which it does not fairly express."
>
> [3 Norman J. Singer, *Sutherland Statutory Construction* § 61.01, at 77 (4th ed. 1986) (footnote omitted) (quoting *Shaw v. Railroad Co.*, 101 *U.S.* 557, 565, 25 *L.Ed.* 892, 894 (1880)).]

*Accord Alfone v. Sarno*, 87 *N.J.* 99, 109, 432 *A.*2d 857 (1981). Thus, because the verbal-threshold statute is silent regarding the question at issue, we must interpret it narrowly and should avoid finding an implied direction to disregard the common-law summary-judgment procedure.

■ Those who differ with our position might advance the competing canon that remedial statutes are to be liberally construed. However, we conclude that even if the verbal-threshold provision is such a remedial statute, the long-standing

common-law rules of summary-judgment procedure are so deeply embedded in our jurisprudence that abrogation of those rules requires a clearer manifestation of intent than is provided here—preferably within the language of the statute itself.

As the Appellate Division observed in *Brown v. Puente, supra,* a pretrial evidentiary hearing on a disputed threshold question would be contrary to the Legislature's goals. 257 *N.J.Super.* at 210, 608 *A.*2d 377. When a plaintiff prevails in the pretrial hearing, a "double trial" situation is created, with both parties being required to produce their evidence—including medical experts, whose services are generally not inexpensive—twice: once at the pretrial hearing, and again at trial. That requirement will reduce neither litigation time nor expenses, and will further congest the courts with "duplicative scheduling and trial needs." *Id.* at 210, 608 *A.*2d 377.

-D-

Our ruling finds support in additional grounds beyond its statutory-construction basis. The Appellate Division in this case relied on an earlier decision, *Fitzgerald v. Wright,* 155 *N.J.Super.* 494, 382 *A.*2d 1162 (App.Div.1978), which held that the trial court must make the entire determination, including the resolution of disputed facts, of whether a plaintiff's injuries satisfied the monetary threshold then in effect. That reliance is unjustified because of the dissimilar context: the *Fitzgerald* court addressed a claim that would have been compensable only under the "monetary" threshold, not the permanent-injury threshold that was also part of the statute then in effect. *Id.* at 497, 382 *A.*2d 1162. The no-fault act "renders inadmissible in a tort action evidence of amounts collectible or paid as personal injury protection benefits." *Id.* at 501, 382 *A.*2d 1162 (citing *N.J.S.A.* 39:6A–12). In order to determine whether a plaintiff has met a monetary threshold, the factfinder needs the very information that is barred from the jury. To require jury determination of that issue, therefore, would require the court

to empanel two juries: one for the threshold question and another to resolve the substantive tort claim. *Id.* at 501–02, 382 *A.*2d 1162.

Two years after *Fitzgerald,* the Appellate Division addressed the "permanence" requirement in *Hill v. Cochran,* 175 *N.J.Super.* 542, 420 *A.*2d 1038 (1980). The court noted that the procedures for determining eligibility under the "monetary" and "permanence" standards are identical unless the court finds a material dispute of fact. In that event the court resolves any dispute with regard to the monetary standard, but "[i]f * * * permanency is in dispute, that issue must be determined at trial by the ultimate finder of fact, whether judge or jury * * *." *Id.* at 547, 420 *A.*2d 1038. When permanency is in issue, jury adjudication does not require consideration of inadmissible evidence and is therefore permissible.

We find the distinction emphasized in *Hill* between jury determination of "permanence" questions and judicial determination of "monetary" questions under the former scheme to be persuasive support for a rule requiring the jury to resolve disputed factual issues relating to the nature and extent of a plaintiff's alleged injuries under the current verbal-threshold requirement. Under the verbal-threshold statute that we consider today, resolution of those facts does not require the factfinder to consider inadmissible evidence.

In addition to the foregoing, practical considerations support the summary-judgment standard. One of those is the double-trial dilemma, discussed *supra* at 310, 609 *A.*2d at 425. Another concern is the situation posed by *amicus curiae,* ATLA–NJ, which claims in its brief that since the Appellate Division's decision in this case, "[m]any carriers are simply refusing to settle any verbal threshold cases," preferring to withdraw their summary-judgment motions and instead force plaintiffs into expensive and cumbersome pretrial evidentiary hearings. That result would run counter to the plan of the Governor and the

Legislature to speed up and simplify the trial of automobile-negligence cases.

We also find unpersuasive the Appellate Division's analogy to an *Evidence Rule* 8 hearing. The obvious purpose of that Rule's allocation to the judge of decisions regarding the admissibility of evidence is to avoid empaneling two juries; after all, to allow the jury deciding the case to rule on the admissibility of the evidence that it will be considering would be absurd. The same considerations led to the Appellate Division's conclusion in *Fitzgerald v. Wright, supra,* that the court must resolve disputed issues of fact regarding a monetary threshold. 155 *N.J.Super.* at 501, 382 *A.*2d 1162.

The policy considerations mandating the separate hearing under *Evidence Rule* 8 do not exist here. Determining the nature and extent of a plaintiff's injuries does not involve the examination of inadmissible evidence. Moreover, at least one commentator has expressed concern over any extension of such a procedure by noting the distinction between rules on admissibility of evidence and those related to tort liability by stating: "The preliminary determination of issues of fact by a judge to ascertain the existence of a privilege should not be applied by analogy to the determination of the issues of fact necessary to determine one's exemption from tort liability." Iavicoli, *supra,* at 138.

We hold that once a court determines that evidence bearing on a plaintiff's injuries could, if believed by the factfinder, satisfy the statutory verbal-threshold requirement, any disputed issues regarding the nature and extent of those injuries must be decided by the jury. Of course, in the absence of any factual dispute the court shall resolve the question of whether plaintiff's injuries meet the verbal threshold. Therefore, if the plaintiff moves for a partial summary judgment on the verbal-threshold issue and the court resolves that question in the plaintiff's favor—that is, the trial court determines as a matter of law that under no view of the medical evidence could a

factfinder conclude that the plaintiff had failed to meet the requirements of at least one of the verbal-threshold categories—then the jury's task (assuming it finds liability in the plaintiff's favor) is limited to a determination of the noneconomic losses.

■ We also adopt the New York rule that the plaintiff must show a material dispute of fact by credible, objective medical evidence. *See, e.g., Gootz v. Kelly, supra,* 528 *N.Y.S.*2d at 447 (granting summary judgment for defendant because plaintiff's subjective complaints of pain not supported by "credible medical evidence"); *Dwyer v. Tracey,* 105 *A.D.*2d 476, 480 *N.Y.S.*2d 781, 783 (1984) ("subjective complaints unsupported by credible medical evidence do not suffice" to prove "serious injury").

If the Legislature intends that the court decide the factual disputes as well, it must express that intent clearly and unambiguously. However, before that body takes such action, we respectfully commend to its consideration the drawbacks that we have listed. We are not at all certain that judicial determination of the facts will accomplish the Legislature's stated goals. Although judicial economy may be a desirable goal, it is not paramount and must not be permitted to outweigh considerations of fairness and jurisprudential soundness. Furthermore, the ramifications of a rule that requires the trial court to determine the facts may prove troubling. One such consequence is the effect of a finding by the court, on disputed facts, that the plaintiff's injuries meet the verbal threshold: will a jury empaneled to award damages be collaterally estopped by such a finding, or will the jury retry that issue?

## IV

We turn now to the second aspect of the appeal, namely, the standard for determining whether an injury meets the verbal threshold.

*N.J.S.A.* 39:6A–8a restricts the recovery of noneconomic losses to nine types of injuries:

TYPE 1: death;

TYPE 2: dismemberment;

TYPE 3: significant disfigurement;

TYPE 4: a fracture;

TYPE 5: loss of a fetus;

TYPE 6: permanent loss of use of a body organ, member, function or system;

TYPE 7: permanent consequential limitation of use of a body organ or member;

TYPE 8: significant limitation of use of a body function or system;

TYPE 9: a medically determined injury or impairment of a non-permanent nature which prevents the injured person from performing substantially all of the material acts which constitute that person's usual and customary daily activities for not less than 90 days during the 180 days immediately following the occurrence of the injury or impairment [hereinafter "90/180-day requirement"].

ATLA–NJ's brief to the Appellate Division alleged that Oswin's injuries were of the categories that are the most elusive of clear interpretation: Type Six ("permanent loss of use of a body organ, member, function or system"), Type Seven ("permanent consequential limitation of use of a body organ or member"), and Type Eight ("significant limitation of use of a body function or system").

As we have pointed out above, unlike the New York statute, which requires "serious injury," New Jersey's no-fault statute does not expressly use that term, requiring only that the injury fit one of the specified types. The distinction is of some moment only because the New York statute defines "serious injury" with a list of nine types of injury that is identical to the list used in the New Jersey statute; a plaintiff who sues under the New York statute merely alleges a "serious injury," often without specifying the type of injury. Because the New Jersey no-fault statute is based on New York's, we use the standards set in *Licari, supra,* 455 *N.Y.S.*2d 570, 441 *N.E.*2d 1088, for evaluating plaintiff's injuries.

In *Licari* the New York Court of Appeals evaluated only two of the injury types: "significant limitation of use of a body function or system" and the 90/180-day requirement. In respect of the first category, the court said:

> [T]he word "significant" as used in the statute pertaining to 'limitation of use of a body function or system' should be construed to mean something more than a minor limitation of use. We believe that a minor, mild or slight limitation of use should be classified as insignificant within the meaning of the statute.
>
> [*Id.* 455 *N.Y.S.*2d at 573, 441 *N.E.*2d at 1091.]

Although the injuries alleged in *Licari* were plainly not within the statutory term "serious injury," that case is helpful in broadly defining the types of injuries that do qualify for compensation under the statute. The plaintiff was a taxi driver who, after an automobile accident, was diagnosed as having "a concussion, acute cervical sprain, acute dorsal lumbar sprain and a contusion of the chest." *Id.* 455 *N.Y.S.*2d at 571, 441 *N.E.*2d at 1089. The hospital released him after two hours, and his family physician told him to rest in bed. Two days later he consulted his physician again, complaining of having coughed up reddish phlegm. Tests revealed that plaintiff had sustained no rib damage and that his lungs were clear. The hospital physician testified that the "plaintiff's lungs were clear, reflexes normal, and * * * he suffered only a 'very mild limitation' of movement in the back and neck areas." *Ibid.*

Twenty-four days after the accident, the plaintiff returned to work, adhering to his pre-accident schedule: twelve hours a day, six days a week. The only limitation he complained of concerning his daily activities was that he was unable to help some fares with luggage and that he could not help his wife with household chores. *Id.* 455 *N.Y.S.*2d at 571–72, 441 *N.E.*2d at 1089–90.

The court rejected the plaintiff's claim in respect of the 90/180–day requirement because he had returned to his normal work schedule within twenty-four days and therefore had been able to perform "substantially all of his daily activities" during the statutory period. *Id.* 455 *N.Y.S.*2d at 574, 441 *N.E.*2d at 1092.

The court also found that the plaintiff had not proved that his concussion and bruised chest had wrought a significant limitation of use of a body function or system, or that his occasional

headaches and dizziness produced more than temporary discomfort. The court concluded that "[t]he Legislature could not have intended headaches and dizziness of the type experienced by plaintiff to constitute a significant limitation of use of a body function or system." *Id.* 455 *N.Y.S.*2d at 575, 441 *N.E.*2d at 1093.

To succeed under either statutory category, a New York plaintiff must offer objective evidence of injury-related disability. *Id.* 455 *N.Y.S.*2d at 574–75, 441 *N.E.*2d at 1092–93. In rejecting the plaintiff's claim under the 90/180–day requirement the court said, "[S]ubjective complaints of occasional, transitory headaches hardly fulfill the definition of serious injury." *Id.* 455 *N.Y.S.*2d at 574, 441 *N.E.*2d at 1092. "We do not believe the subjective quality of an ordinary headache falls within the objective verbal definition of serious injury as contemplated by the No–Fault Law." *Ibid.* With regard to the "significant limitation of use of a body function" claim, the court said:

> Plaintiff offered no evidence as to the *extent* of the limitation of movement. * * * No evidence was offered to show that any of these injuries caused a significant limitation of use of a body function or system. * * * No proof was offered to show that these ailments ever went beyond mere temporary discomfort, relieved by aspirin.
>
> [*Id.* 455 *N.Y.S.*2d at 575, 441 *N.E.*2d at 1092–93.]

Although the court in *Licari* did not address any "permanency" requirement, later New York cases ruling on summary-judgment motions have done so. (Most of those cases, even in the State's highest court, offer little or no analysis of their holdings.) In *Lopez v. Senatore, supra,* the court held that "mere repetition of the word 'permanent' in the affidavit is insufficient to establish 'serious injury,' and * * * summary judgment should be granted for defendant where the plaintiff's evidence is limited to conclusory assertions tailored to meet statutory requirements." 494 *N.Y.S.*2d at 102, 484 *N.E.*2d at 131.

According to the court in *Licari,* the key to construing "serious injury" is "examin[ing] the policies and purposes un-

derlying [New York's] no-fault legislation." 455 *N.Y.S.*2d at 572, 441 *N.E.*2d at 1090. The policies underlying that statute are similar to those of the New Jersey no-fault statute: to reduce the amount of litigation and to hold down the cost of premiums. *Id.* 455 *N.Y.S.*2d at 573, 441 *N.E.*2d at 1091. Although *Licari* provides scant direct guidance for resolving this case, we read it to mean that to recover noneconomic damages, a plaintiff must have objective evidence demonstrating a "fit" within the statutory definition, that is, that he or she suffered, for example, a "significant limitation of use of a body function or system."

A plaintiff must show a nexus between the injury and the disability. The injury by itself does not fulfill the statutory requirement; rather, the resultant loss and disability are the key. As the Appellate Division stated in this case, a plaintiff must show that "the injury had a serious impact on the plaintiff and her life." 250 *N.J.Super.* at 470, 595 *A.*2d 522. That requirement seems to comport with the New York cases. See, *e.g., Dwyer v. Tracey, supra,* 480 *N.Y.S.*2d at 783 (requiring plaintiff to establish " 'permanent loss' " or " 'permanent consequential limitation of use of a body organ or member' " by "competent medical proof"). The same case holds that "subjective complaints unsupported by credible medical evidence do not suffice." *Ibid.; accord Scheer v. Koubek,* 70 *N.Y.*2d 678, 518 *N.Y.S.*2d 788, 512 *N.E.*2d 309 (1987) (holding threshold not met by subjective complaints of transitory pain unsupported by objective evidence). *Compare Waldman v. Dong Kook Chang,* 175 *A.D.*2d 204, 572 *N.Y.S.*2d 79 (1991) (finding insufficient plaintiff's merely-conclusory assertions; plaintiff's contention of 15% limitation in movement, even if supported by evidence, not adequate to establish "serious injury") *with Assaf v. Ropog Cab Corp.,* 153 *A.D.*2d 520, 544 *N.Y.S.*2d 834 (1989) (approving plaintiff's objective medical evidence and detailed listing of injuries and of their effect). The foregoing cases are but a small sampling of cases from New York's Appellate Division. The rule seems to be that plaintiffs who can show objective

evidence of injury and disability that fit the statutory definition of "serious injury" will be considered to have made out a prima facie case of "serious injury."

We understand that one might view the "serious impact on plaintiff's life" test as somewhat subjective. To ensure uniform application of that test, we emphasize that plaintiffs must submit *objective, credible* evidence that could support a jury finding in his or her favor. We respect the abilities of medical professionals to ascertain the presence of a genuine, disabling injury, but we nevertheless are satisfied that the Legislature sought to guard against a finding of "serious injury" when plaintiff's proofs are based solely on subjective complaints of pain.

In keeping with our duty to advance the Legislature's goals as we understand them, we reject an approach that would automatically vault all soft-tissue injuries over the verbal threshold—an approach that Florida seems to have followed. That state's Legislature, in response to an insurance-industry study on the means by which plaintiffs meet the verbal threshold, commissioned its own study. That study found that establishing an injury that falls within Florida's threshold is not difficult: eighty-two percent of plaintiffs who had met the threshold had done so by alleging a permanent disability. Approximately seventy-one percent of successful plaintiffs had received a disability rating of less than ten percent, and fifty-one percent of the plaintiffs who had succeeded had done so on the basis of medical reports whose rating of pain was based only on subjective complaints of pain. Patrick F. Maroney et al., *No–Fault Verbal Thresholds: How is One Pierced?, J.Ins. Reg.* 482, 493–95 (1991) (discussing findings of *Report of the Motor Vehicle Insurance Task Force of 1989* (March 30, 1990)).

Although our requirement of objective, credible evidence will eliminate many soft-tissue injuries, we do not presume that plaintiffs alleging such injuries are necessarily barred from recovery; rather, we require objective *proof of*

such injury and consequent disability. We recognize that producing such proof may be difficult; but even though soft-tissue injuries are not apparent in X-rays, they often manifest themselves in objective form, including swelling, discoloration, and spasm. Because most range-of-motion tests are based only on patients' pain responses, they ordinarily will not suffice unless the restricted mobility is verified by physical examination and observation.

In this case we conclude that Oswin has not adequately supported a claim for relief under the verbal-threshold statute. Dr. Hila's report is admirably specific in showing the degrees of limitation in six different types of movement, but as we have stated, those range-of-motion tests are not enough. Furthermore, the report does not connect those limitations, nor Dr. Hila's objective findings, to any "permanent loss of use," "permanent consequential limitation of use," or "significant limitation of use." As specific as are his findings on Oswin's injuries, his findings regarding the impact of those injuries amount to little more than a paraphrasing, in the most conclusory language, of the statutory requirements. We agree with the Appellate Division's perception that the conclusions in Dr. Hila's report did nothing more than parrot the statute. A mere six months of treatment does not demonstrate permanence of disability (and even that treatment was "conservative"). The report was rife with unexplained technological terms ("foraminal encroachment," "cervical myofascitis with discogenic radiculopathy," and "hyperflexion-hyperextension syndrome," for example), familiar, no doubt, to the personal-injury bar and to many judges, but not facially revealing. Moreover, to the extent that those terms describe objective manifestations of injury, we are satisfied that as a matter of law those injuries are not of the type that the Legislature contemplated would survive its verbal threshold test. They are simply not of the "serious" nature that this statute envisions.

Thus, because Oswin's injuries did not meet the statutory verbal-threshold requirement, we hold that she may not recover noneconomic damages from Shaw for those injuries.

## V

Plaintiff and *amicus* have both raised several constitutional objections to the verbal-threshold statute. Both contend that because compliance with the verbal threshold is a question of fact, to allocate that decision to the court violates the right to a jury trial. *See U.S. Const.* amend. VII; *N.J. Const.* art. I, ¶ 9. They rely on *Tobin v. Greenberg*, 659 *F.Supp.* 959 (S.D.N.Y. 1987), which held that the rule of *Licari* violates the federal jury-trial right and therefore is inoperative in diversity cases brought in federal court. The court in *Tobin* based its holding on its perception that the questions of "permanence" and "significance" are actually factual determinations that *Licari* allocates to the court. *Id.* at 962. We disagree. "Permanence" is factual, and "significance" is highly fact-sensitive; under the rule we adopt today, the jury does indeed decide those factual matters that are central to the court's verbal-threshold determination; therefore, our ruling does not run afoul of constitutional jury-trial rights.

*Amicus* also alleges that the verbal-threshold statute itself, by requiring consumers to choose between two threshold options, violates constitutional due-process and equal-protection guarantees. Because that issue was raised only by *amicus* and is neither among the issues on which certification was granted nor significant in future litigation of this issue, *see Scafidi v. Seiler*, 119 *N.J.* 93, 109–10, 574 *A.*2d 398 (1990), and because the issue was not adequately briefed, we decline to decide it.

## VI

To summarize, we affirm the judgment of the Appellate Division upholding the trial court's entry of summary judgment for defendant because plaintiff's injuries do not come within the

categories listed in the verbal-threshold statute. However, we disagree with the Appellate Division's conclusion that the court must decide all threshold-related issues, including resolution of material disputes of fact; we hold that the court should decide only the legal issue of whether a plaintiff's alleged injuries, if evidence thereof is believed, would meet the verbal threshold, and we allocate the determination of the nature and extent of the plaintiff's injuries to the jury when the plaintiff shows by credible, objective medical evidence the existence of a material dispute of fact.

Judgment affirmed.

*For affirmance*—Chief Justice WILENTZ and Justices CLIFFORD, HANDLER, POLLOCK, O'HERN, GARIBALDI and STEIN–7.

*For reversal*—None.