640 A.2d 363

HILDA LEVINE v. PETER MILLER.

Superior Court of New Jersey
Law Division Ocean County

Decided December 9, 1993.

*Harold N. Hensel* for plaintiff (*Rumpf & Hensel,* attorneys).

*Robert J. Novins* for defendant (*Novins, York & Pentony,* attorneys).

PISCAL, J.S.C.

■ This matter comes before the court on the plaintiff's, Hilda Levines's, motion for partial summary judgment. The issue presented is whether a fracture to a prosthetic device permanently implanted in an individual's mouth constitutes a serious injury that satisfies the verbal threshold criteria, ie. is this an injury that results in one of the nine types of injuries specified in *N.J.S.A.* 39:6A–8(a). This issue appears to be one of first impression in this State, and for the reasons that follow, the plaintiff's motion for summary judgment is granted.

### Facts

This litigation arises from a claim for injuries sustained by the plaintiff, Hilda Levine, as a result of an automobile accident involving the defendant, Peter Miller, which occurred on December 8, 1990. The plaintiff was a passenger in a vehicle operated by her husband, Jack Levine. At the time of the accident, the plaintiff was covered under an insurance policy issued by Travellers Insurance Company. The Levines selected the "Verbal Threshold" option under this policy. Thus, *N.J.S.A.* 39:6A–8(a) is controlling.

Plaintiff was taken to Kimball Medical Center for treatment immediately following the accident, where she complained of pain in her head and lower back. She was treated in the emergency room and released that same day.[1]

---

[1] This court dealt with the head and back injuries in the context of a summary judgment motion filed by the defendant, Peter Miller, and argued on October 22, 1993. The plaintiff submitted credible, objective medical findings which could

On or about January 11, 1991, Mrs. Levine presented herself to Dr. Richard Epstein, a local dentist, for various dental procedures which she claims were a result of the accident. Epstein prepared a hand-written note attached to his hand-written narrative report indicating the course of treatment. Epstein noted that Mrs. Levine complained that a fixed bridge attached from tooth number six to tooth number nine was loose. Epstein stated that he easily removed the fixed bridge from the supporting teeth. In addition, Epstein indicated that part of the posts in tooth number six and tooth number nine were broken off. In addition, porcelain covering tooth number nine had fractured off the casting. Epstein recemented the fixed bridge.

Epstein went on to indicate that, in February and March, he adjusted and made repairs to the removable maxillary partial denture. In April, further repairs were made to the fixed bridge from tooth number seventeen through tooth number twenty one. In June, Mrs. Levine treated with Epstein because the fixed bridge from tooth number six to tooth number nine was off its supporting teeth. Tooth number six required a new core to be placed on its post. Moreover, Epstein indicated that tooth number eighteen had abscessed and required extraction. In addition, tooth number nine required a new post and core and again the fixed bridge required recementing.

Epstein thereafter referred Mrs. Levine to Dr. Martin Ladman, D.M.D., regarding the possibility of placing implants in the right side of the upper jaw to help support the fixed bridge or replacing the teeth supporting the fixed bridge. In September, Ladman noted that the fixed bridge on tooth number six through tooth number nine was off its supporting teeth once again. Ladman further noted that the post and core on tooth number nine was fractured and non-restorable and further noted that the post in tooth number six was out of the tooth. With tooth number seven

---

support a jury finding that the verbal threshold had been met. Defendant's summary judgment was denied.

and tooth number eight now missing, the fixed bridge was rendered non-useable. Because of this, Ladman extracted tooth number six and tooth number nine.

Travelers Insurance Company, the PIP carrier in this matter, requested Mrs. Levine to attend an "independent medical examination". On June 20, 1991, Dr. Robert Moritz, D.D.S., rendered a report to Travelers. Moritz found that restorative dentistry was necessary as a result of the accident.

Ultimately, Ladman performed oral surgery in February of 1992. Epstein followed up by inserting oral implants in October of 1992.

Plaintiff argues that the defendant has failed to recognize that Mrs. Levine sustained a fracture. Plaintiff further argues that this diagnosis of a fracture was rendered by both the treating dentists and the independent dentist utilized by the PIP carrier.

Plaintiff contends that her injury meets the verbal threshold requirements, namely category 4. The defendant argues that the breaking of a prosthetic bridge in an individual's mouth is not compensable under the no fault statute, and therefore the plaintiff's injuries are not sufficient to meet the verbal threshold.

### Opinion

The New Jersey courts have not addressed the issue of whether a fracture sustained by a prosthetic device permanently implanted in an individual's mouth may constitute a serious injury under no fault law.

The New Jersey no fault statute does not define the term "fracture" found in category 4. In addition, there is nothing in the statute's legislative history to assist in the interpretation of the term. There is also nothing in the statute to suggest that category 4 is limited to the breaking of an individual's natural bone or cartilage. This court is of the opinion that the compensable injuries contemplated by the statute may include a fracture sustained by a prosthetic device permanently implanted in an individual's mouth if the fracture is of such a nature as to qualify

as a "serious injury" based upon objective medical findings and if that "fracture" has a serious impact on the plaintiff's life.

It is well established that the Legislature intended that the no fault statute reduce litigation in the area of automobile personal injury claims by providing a system of personal injury protection without regard to fault. This system was intended to provide expeditious and inexpensive compensation to an injured individual for his economic losses within certain limitations. *Fitzgerald v. Wright*, 155 *N.J.Super.* 494, 382 *A.2d* 1162 (App.Div.1978). However, the no fault system was not designed to completely eliminate tort recoveries. Under this system, injured individuals may sue for recovery of non-economic loss stemming from certain types of injuries. *See N.J.S.A.* 39:6A–8. Specifically, the verbal threshold provides that a person who sustains a bodily injury arising out of ownership, operation, maintenance, or use of an automobile in this State shall be barred from recovering compensatory damages for non-economic loss unless the injuries fall within one of nine categories, including a fracture.

Under *Oswin v. Shaw*, 129 *N.J.* 290, 609 *A.2d* 415 (1992), the court must determine whether the alleged injury would, if proven, meet the requirements of one of the verbal threshold categories. It is then the jury's task to determine the nature and extent of the injuries. In *Oswin*, the Court held that:

> [P]laintiffs must submit objective, credible evidence that could support a jury finding in his or her favor. We respect the abilities of medical professionals to ascertain the presence of a genuine, disabling injury, but we nevertheless are satisfied that the Legislature sought to guard against a finding of "serious injury" when plaintiff's proofs are based solely on subjective complaints of pain. *Id.* at 319, 609 *A.2d* 415.

The *Oswin* test must be applied to plaintiff's alleged injuries to determine if they satisfy the verbal threshold requirements. In this case, the plaintiff sustained a fracture to a prosthetic device permanently implanted in her mouth. The plaintiff has submitted objective, credible medical evidence of the fracture to the bridge which could support a jury finding that she has met verbal threshold category number 4. In addition, the plaintiff has put

forth evidence which could support a jury finding that plaintiff's injuries had a serious impact on her life.

The plaintiff submitted evidence indicating that the accident initially loosened her fixed bridge. The fixed bridge continually fell off its supporting teeth and was ultimately rendered non-useable. The plaintiff's evidence indicated that posts and cores of various teeth had fractured. Several of these posts and cores sustained such serious fractures that they were incapable of being restored. In addition, porcelain covering several of plaintiff's teeth had fractured off their casting. Both treating dentists, as well as the dentist who performed the "independent medical examination" found that restorative dentistry was necessary as a result of the accident.

The plaintiff has also submitted evidence indicating that her alleged injuries had a serious impact on her life. The accident occurred on December 8, 1990. The plaintiff first presented herself to Epstein for dental procedures on January 11, 1991. The plaintiff continually treated with both Epstein and Ladman throughout 1991. Ladman performed oral surgery in February 1992. The plaintiff's treatment did not end until Epstein put in oral implants in October 1992. The plaintiff clearly required extensive restorative dentistry as a result of the accident. The plaintiff was forced to undergo painful and invasive procedures, including the extraction of several teeth, the replacement of numerous posts and cores and repeated recementing of the fixed bridge. In addition, the plaintiff underwent oral surgery and received oral implants. Since the plaintiff required such extensive, continual treatment, this court is of the opinion that a jury could find that plaintiff's injuries had a serious impact on her life.

■ Although the plaintiff did not raise this issue in her motion for summary judgment, this court finds that the plaintiff has submitted objective, credible medical evidence which could support a jury finding that she has satisfied verbal threshold category 6, i.e., permanent loss of the use of a body organ, member, function or system. The evidence established that plaintiff's treating den-

tists extracted three of plaintiff's teeth. The evidence also indicates that such extraction was necessary as a result of the accident. Based on these facts, this court is of the opinion that plaintiff's injuries could qualify as a category 6 injury.

The plaintiff's motion for summary judgment is granted.